Turner, J.
 

 We are here presented with a shotgun attack on the Court of Appeals’ decision and judg- . ment.
 

 At one point in the brief of appellant (who was plaintiff below) it is said:
 

 “The original action by appellant, the plaintiff, was based on two principal contentions, first, that the proceedings of the joint township hospital district •board of trustees with reference to the organization
 
 *80
 
 of said district and the issuance of bonds were not in conformity with the statutes and were, therefore, unlawful and void and, secondly, that the provisions of General Code Sections 3414-1
 
 et seq.,
 
 providing for the creation of a joint township hospital district are unconstitutional and void.”
 

 A little later in the brief appellant says:
 

 “Plaintiff’s [appellant’s] contentions in the instant case fall under two main headings :
 

 “1. That the defendant board [joint township hospital district board], in its proceedings for election and issuance of the bonds in question, has disregarded the mandatory provisions of the Uniform Bond Act, and that such proceedings are therefore unlawful and void.
 

 “2. That the township district hospital act (G. C. Sections 3414-1
 
 et seq.)
 
 are unconstitutional and therefore the proceedings thereunder for issuance of the bonds in question are unlawful and void.”
 

 However, the actual challenge in the many pages of the briefs is still wider.
 

 The case was tried
 
 de novo
 
 in the Court of Appeals. Even a new pleading to conform with the evidence in the Court of Appeals was filed. Where a transcript of the evidence in a tidal court is the basis of the decision in the Court of Appeals, the finding, opinion and journal entry of the judge of the Common Pleas Court, are usually helpful. However, as here, where the transcript from the trial court is abandoned and a new record is made, the proceedings in the Common Pleas Court are of little or no help. Notwithstanding, .appellant’s briefs contain much reference to what took place in the Court, of Common Pleas.
 

 In its decision, the Court of Appeals said:
 

 • “In consideration that grounds for injunction existed at the time the action was commenced in the
 
 *81
 
 Court of Common Pleas of Auglaize county, Ohio, * * * such grounds do not now exist by reason of correction of defendants’ records * *
 

 Appellant’s contentions are based largely upon the claim that neither exhibit “7” nor exhibit “8” should have been admitted in evidence and that without such exhibits there was nothing upon which to base the judgment of the Court of Appeals. We hold that exhibit “7” was properly admitted as a part of the record and exhibit “8” was properly admitted as a
 
 nunc pro tunc
 
 correction of the record.
 

 The Court of Appeals’ finding in regard to the record of the board’s proceeding is set forth in the decision as follows:
 

 “Under the first complaint we find that at a special meeting of the joint township district hospital board, held at St. Marys, Ohio, on Friday, March 26, 1948, the records of the hospital board were corrected to conform with the actual truth. At this board meeting all of the members of the board present voted by unanimous action and the minutes were corrected in conformity to what had actually happened, and in •compliance with the statutes relating thereto. * * *
 

 “This court specifically finds that the record, as •amended, presents the real facts and shows that the board acted in accordance with law. * * *
 

 “No real defect existed in the original resolutions and the voters were not confused by the notice of •election or by the ballot issued to them which were in no wise contradictory.”
 

 Much time was used in the argument and much space in the briefs is devoted to exhibits “7” and “8.” Exhibit “7” is a part of the record of the joint board. According to the testimony of the assistant to the secretary, the records of the board were kept in two books, the minutes of the board being kept separate
 
 *82
 
 from the resolutions. There is no provision which requires all the record to be kept in a single book. Indeed, keeping the minutes separate from the resolutions appears to be a reasonable practice.
 

 While appellant claims that the connection between the different parts of the record was established by parol, appellant does not question the use of parol to identify an exhibit but does question the use of parol to supply an omission in the written record of reference to other exhibits which are sought to be linked by parol as a part of the same record. There was no violation of the parol-evidence rule but simply an identification of the different parts of the record.
 

 Appellant contends that exhibit '‘7,” which was exhibit “B” in the Court of Common Pleas, and appellant’s exhibit “8” cannot be reconciled. This overlooks the fact that exhibit “8” is a
 
 nunc pro iunc
 
 record of what actually happened.
 

 The Court of Appeals found specifically that the record as set forth in exhibit “8” presents the real facts and shows that the board acted in accordance with law.
 

 Harry Freet testified that he was chairman of the hospital board and served as assistant to the secretary and as such had charge of the records of the board. On cross-examination Mr. Freet was asked:
 

 “Q. Then you go through appellant’s exhibit 7 and tell the court which of those sheets constitute your original records other than your minute book? A. I will say all original record. ’ ’
 

 Mr. Freet was also asked:
 

 “Q. I now hand you defendants-appellants ’ exhibit ‘8’ and ask you to state what that is? A. This is the original copy of the meetings, resolutions and procedure of the hospital board
 
 * *
 

 Later, Freet was asked by the court in respect of ex-
 
 *83
 
 Mbit “8”: “Does that correctly state the facts that actually happened on September 4? By the witness: Yes, sir.”
 

 In the opinion in the case of
 
 Village of Vinton v. James,
 
 108 Ohio St., 220, 231, 140 N. E., 909, Judge Allen made the following observations which are pertinent here and in keeping with the holding in that case:
 

 “The question further arises whether, in such a case as this, where the court has specifically found that council did comply with the law, a record of that fact can be made after the proper time for record, in order that the action of council may have validity. * * *
 

 “It is in accord with the spirit of-the law to permit the amendment of errors in records after the proper time for the making of the record has passed.
 
 Nunc pro tunc
 
 entries are authorized in courts when the proof is that the written memorial does not accurately reflect the facts, 15 Corpus Juris, p. 975,
 
 et seq.
 

 “Records of administrative and legislative bodies are allowed to be changed, after the time when they should have been made, in order to conform with the actual truth.” See, also, 35 Ohio Jurisprudence, 27, 43, Sections 24 and 38.
 

 In 37 American Jurisprudence, 678, Section 65, it is said:
 

 “After the record has been amended, it is entitled to the same respect as an original record. The only remedy of a person who is injured by such amendment and claims that the original entry was correct is by a direct proceeding to have the minutes as amended annulled, and the original minutes restored. While the amended minutes remain, they cannot be impeached or varied in a collateral proceeding.”
 

 We have carefully examined the various claimed defects in respect of these exhibits and find no prej
 
 *84
 
 udicia] error in the action of the Court of Appeals.
 

 The Joint Township District General Hospital Board of the Joint Township Hospital District Consisting of German, Jackson, Noble and St. Marys Townships in Auglaize County, Ohio, was organized under authority of Section 3414-1, General Code (119 Ohio Laws, 354), effective August 21, 1941, which provides:
 

 “The trustees of any two or more contiguous townships in any county may by a two-thirds favorable vote of each of said board of trustees, form themselves into a joint township district hospital board for the purpose of establishing, constructing and maintaining a joint township district general hospital, and aforesaid contiguous townships wherein said two-thirds favorable votes shall have been taken, shall become and be a part of a joint township hospital district.
 

 “Said joint township district hospital board shall organize within thirty days after the favorable vote shall have been taken by the last board of trustees joining themselves into said joint township district hospital board, and the president of the board of township trustees of the most populous township participating shall give notice of the time and place of organization, to each of the members of the boards of trustees of each and every township comprising said joint township hospital district, which notice shall be signed by the president of the board of trustees of said most populous township comprising the hospital district, and be sent by registered mail to each and every member of the boards of trustees of the townships affected, at least five days prior to said organization meeting, and said meeting shall be held in one of the townships participating. All members of the boards of township trustees of all the townships so participating, shall comprise the joint district hospital
 
 *85
 
 board. For the purpose of this act two-thirds of all the duly elected township trustees of the townships constituting said joint township hospital district shall constitute a quorum for the transaction of any and all business. Said members of the respective boards of township trustees shall proceed at said organization meeting with the election of a president, secretary and treasurer, and such other officers as they deem proper and necessary, and shall transact such other business as may properly come before said board.”
 

 The hospital district board involved adopted resolutions providing for an election on a $500,000 bond issue at the regular election, November 5, 1946. Such election was held and resulted in the casting of 3,093 votes in favor of the bond issue and 1,393 votes against it.
 

 While evidence and procedure in the Court of Common Pleas are argued extensively, it must be remembered that our review is limited to the record made in the Court of Appeals on the trial
 
 de novo.
 

 We agree with the Court of Appeals wherein it is said in its decision:
 

 “Records of administrative and legislative facts are allowed to be changed after the time when they should have been made, in order to conform with the actual truth. * * *
 

 “Where there is a substantial compliance with the statutory requirement and there is nothing to indicate that the result of the election might have been different had there been full compliance the election will not he invalidated. ’ ’
 

 The assistant to the secretary was asked:
 

 “Q. At that meeting [March 26] your board passed or attempted to pass resolution correcting their minutes as of a date preceding the date the suit was filed? A. That’s right. Correct minutes of September 4.
 

 
 *86
 
 “Q. Were the minutes of any other meeting attempted to be corrected at that meeting of March 26, last Friday? A. Of the fourth and also asked that our resolution — we passed the resolution to correct the minutes of September 4 so they would read in compliance with the resolution that was passed. 1 am only a layman and I did not get all the necessary facts of the meeting and I made some mistakes and I explained to the board and that was their resolution to go ahead and correct those minutes.”
 

 Accepting the
 
 nunc pro tunc
 
 record as considered by the Court of Appeals, we pass to the question whether there was compliance with the Uniform Bond Act.
 

 Section 3414-2, General Code, being part of the Joint Township Hospital Districts Act, provides in part :
 

 “Such bonds shall be issued and sold under the same manner and conditions and within the limitations prescribed by the Uniform Bond Act, Sections 2293-1 to 2293-86, inclusive, of the General Code of Ohio.”
 

 Appellant in argument proceeds upon the theory, contrary to the finding of the Court of Appeals, that there was an incorrect certification of the record and that the correcting of the record was a flaunting of the authority of the Court of Common Pleas. While it is hardly material here, it may be pointed out that the journal entry of the Court of Common Pleas does not forbid the board correcting its records or forbid the passing of a proper bond resolution.
 

 Appellant says:
 

 “Although the hospital sections (G. C. Sections 3414-1 ei
 
 seq.)
 
 are silent on this matter of records as well as on so many other matters, yet they do expressly require that the Uniform Bond Act be complied with.”
 

 
 *87
 
 One of the sections of the Uniform Bond Act cited by appellant to be complied with is Section 2293-30, General Code, which provides:
 

 “It shall be the duty of the clerk, or other officer having charge of the minutes of the taxing authority
 
 to furnish to the successful bidder
 
 for its bonds, a true transcript certified by him of all ordinances, resolutions, notices, and other proceedings had with reference to the issuance of said bonds, including a statement of the character of the meetings at which said proceedings were had, the number of members present, and such other information from the records as may be necessary to determine the regularity and validity of the issuance of said bonds; and it shall be the duty of the auditor or other officer, having charge of the accounts of said subdivision, to attach thereto a true and correct statement certified by him of the indebtedness, and, of the amount of the tax duplicate thereof, and such other information as will show whether or not said bond issue is within any debt limitation imposed by law.” (Italics ours.)
 

 This section is for the benefit of the successful bidder of the bonds and no complaint has been made in this case on his behalf.
 

 Appellant, upon examining the record to be as found by the Court of Appeals, claims the following errors:
 

 “A. The corrected minutes show that all three of the initial and interdependent resolutions were passed at the same meeting contrary to the provisions of the Uniform Bond Act.
 

 “B. The notice of election remains ambiguous and uncertain in a material matter.
 

 ‘ ‘ C. The resolutions, upon which the county officials acted and upon which the election was actually held, remain uncorrected and admittedly defective in a material matter. ”
 

 
 *88
 
 As to the telescoping (i. <?., the passing of several resolutions on the same day), we find nothing in the Uniform Bond Act which requires the steps to be taken in any particular order (Section 2293-19, General Code).
 

 While appellant relies upon both Sections 2293-10 and 2293-19, General Code (parts of the Uniform Bond Act), for procedure, we are of the opinion that where the authorities submit the question of issuing bonds to the electors the procedure is governed by Section 2293-19, General Code, which is the section properly followed by the board in adopting its original resolution.
 

 Section 2293-19, General Code, provides:
 

 “The taxing authority of any subdivision may submit to the electors of such subdivision the question of issuing any bonds which said subdivision has power to issue. When it desires or is required by law to submit any bond issue to the electors, it shall pass a resolution, declaring the necessity of such bond issue and fixing the amount, purpose and approximate date, interest rate and maturity, and also the necessity of the levy of a tax outside of the limitation imposed by Article XII, section 2 of the constitution to pay the interest on and to retire the said bonds. It shall certify such resolution to the county auditor at least sixty days prior to the election at which it is desired to submit such questions. Thereupon and more than fifty days prior to such election the county auditor shall calculate and certify to the taxing authority the average annual levy * # * throughout the life of the bonds which will be required to pay the interest on, and retire, such bonds, assuming that they are all issued in one series and that the amount of the tax list of such subdivision remains throughout the life of said bonds the same as the amount of the tax list for the current year, and if this is not determined, the esti
 
 *89
 
 mated amount submitted by tbe auditor to tbe county budget commission. Thereupon the said taxing authority, if it desires to proceed with the issue of said bonds, shall, more than forty days prior to such election, certify its resolution, together with the amount of the average tax levy * * * estimated by the county auditor, and the maximum number of years required to retire the bonds, to the deputy state supervisors of elections of the county who shall prepare the ballots and make other necessary arrangements for the submission of the question to the voters of the subdivision. ’ ’
 

 This section requires the adoption of but one resolution declaring a necessity of the bond issue, the fixing of the terms thereof and the necessity of an unlimited tax. It is customary for boards to adopt further resolutions. It will, therefore, be seen that the passage of the several resolutions on the same day (telescoping, as referred to in the briefs) is unobjectionable under Section 2293-19, General Code.
 

 Appellant claims that the certificate of the fiscal officer (required under Section 2293-10, General Code) must be in existence and present before any further action can be taken. The board did not proceed under Section 2293-10, General Code, but did proceed under Section 2293-19, General Code.
 

 Nevertheless, assuming that Section 2293-10, General Code, did apply, appellant points out that while the action of the board was taken on September 4, the auditor’s certificate is dated September 5. However, the record shows the following:
 

 “Mr. Freet reported that he had discussed with the county auditor the amount of the tax levy necessary for a $350,000 bond issue and a $500,000 bond issue on the basis of bonds running for 20 years at
 
 2%
 
 interest. He reported that the auditor had computed the millage
 
 *90
 
 that would have to be submitted to the voters as 1.715 mills for a $500,000 issue and 1.20 mills for $350,000. Mr. Freet had with him a memorandum from the auditor showing his calculations for the two different amounts of bonds. There was considerable discussion of the amount of bonds to be issued and the sense of the meeting was that $500,000 bonds should be issued. ’ ’
 

 Assuming, as claimed by appellant, that Section 2293-10, General Code, as well as Section 2293-19, Genera] Code, is applicable here, we are of the opinion that there was such substantial compliance with Section 2293-10, General Code, as involved no violation of that section.
 

 After Mr. Freet had reported his conference with the auditor the record shows that: “Mr. Vogel moved the adoption of resolution requesting the county auditor to certify the estimated life of the proposed permanent improvement and the maximum maturity of bonds proposed to be issued, after submission to the electors, reading as follows * #
 

 We find that the proper procedure of the board was under Section 2293-19, General Code, and we find nothing therein which invalidates the procedure followed by the board.
 

 As reflecting upon this court’s interpretation of the Uniform Bond Act. we call attention to the case of
 
 State, ex rel. Board of Education of Springfield Local School Dist., Summit County,
 
 v.
 
 Maxwell,
 
 144 Ohio St., 565, 60 N. E. (2d), 183, wherein it was held:
 

 “1. The terms of Section 2293-21, General Code, providing that the notice of an election on a proposed bond issue of a political subdivision shall be published in a newspaper of general circulation once a week for four consecutive weeks prior to the election, are sufficiently met where the notice is published once a week for four consecutive weeks but the first notice appeared slightly less than 28 days before the election.
 

 
 *91
 
 “2. The bond issue of a political subdivision, approved at an election by more than the requisite percentage of electors voting thereon, will not be invalidated on the ground that the resolution of necessity passed under Section 2293-19, General Code, provided for a maximum maturity of 20 years, whereas the notice of the election and the ballots submitted provided for a tax levy covering a maximum period of 22.5 years.”
 

 Appellant’s contention that the notice of election remains ambiguous and uncertain in a material matter is based upon the statement of the question submitted which is in the following words:
 

 “Notice is hereby given that in pursuance of a resolution of the Joint Township General District Hospital Board of the Joint Township Hospital District composed of Jackson, German, St. Marys and Noble townships and said board consisting of all the townships, trustees of aforesaid four townships of Auglaize county, Ohio, passed on the 4th day of September, 1946, there will be submitted to a vote of the people of said joint townships at the November election to be held in the joint townships of Auglaize county, Ohio, at the regular places of voting therein, on Tuesday, the 5th day of November, 1946, the question of issuing bonds of said Jackson, German, St. Marys and Noble townships in the amount of five hundred thousand dollars ($500,000) for the purpose of constructing and equipping a joint township district general hospital in the sum of five hundred thousand dollars ($500,000) * *
 

 Appellant asks: “What right or authority has the district board to issue or submit the question of issuing township bonds?”
 

 Certainly the board of elections did not find the notice ambiguous for on the official questions or issues ballot there was printed:
 

 
 *92
 
 “Proposed Bond Issue.
 

 “Shall bonds be issued by the joint township general district hospital board composed of Jackson, German, St. Marys and Noble townships of Auglaize county, Ohio, for the purpose of * *
 

 Certainly it was made clear to the electors that they were to vote for the issuance of bonds by the joint township general hospital district board and not the bonds of the respective townships. Appellant admits that the ballot was in proper form. Certainly when the bonds were issued they did become general obligations of the entire district.
 

 We find no support in the record for the claim that the resolutions upon which the county officials acted and upon which the election was actually held remain uncorrected and admittedly defective in a material manner.
 

 To take up the many subjects discussed in appellant’s briefs and analyze them item by item would unnecessarily encumber this opinion. Suffice it to say that we have carefully examined all the claims made by appellant involving substance and procedure, and find no error prejudicial to bis rights.
 

 Finding no prejudicial error otherwise, we turn now to the challenge of constitutionality raised by appellant. In plaintiff’s petition there is the allegation:
 

 “The plaintiff says that said statutes [Sections 3414-1 to 3414-8, inclusive, Genera] Code] are unconstitutional and void and said resolutions, appointments and proceedings” taken by the authorities under such sections “are invalid and void in'that they are respectively in conflict and violate the Constitution of Ohio, to wit: Article 1 Section 2, Article I Section 20, Article II Section 26, Article X Section 2 and Article XII Section 2; and are respectively in conflict and violate the Fourteenth Amendment of the Constitution of the United States.”
 

 
 *93
 
 In their brief, counsel for appellant pose their question as follows:
 

 “Are the provisions of General Code Sections 3414-1
 
 et seq.
 
 a delegation of legislative authority, and therefore unconstitutional and void?”
 

 The act authorizing the creation of joint township hospital districts is embraced in twelve sections of the General Code as enacted in 119 Ohio Laws, 354, and 122 Ohio Laws, 411. It is impractical and unnecessary to set forth the entire act in this opinion. However, Section 3414-1, General Code,
 
 supra,
 
 provided for the •organization of the joint township district hospital board. Neither Section 3414-1, General Code, nor the related sections of the act unconstitutionally delegate to the joint township hospital board any legislative powers or any police power, nor do they violate the equal protection provision of either the state or feder-. al Constitutions. The claimed legislative “delegation” involves nothing more than the delegation of administrative discretion to the township trustees as an existing administrative body. There is no attempted delegation of authority to enact laws either of the authority’s own intiative and finality or upon the approval of some other person, persons or authority. It should need no citation of authorities to uphold the proposition that the establishment of the hospital neither unlawfully invades the police power nor the right to protect the health of the community. The erection and maintenance of such a hospital is subject to a vote of the people and cannot be said to violate Section 2 of Article I of the Ohio Constitution.
 

 We fail to see the claimed violation of Section 20 of Article I. Neither does the act here in question violate Section 26 of Article II of the Constitution, which requires that all laws of a general nature shall have uniform operation throughout the state and that no laws
 
 *94
 
 except such as relate to public schools may be passed to take effect upon the approval of any other authority than the General Assembly. Any two or more contiguous townships in any county in the state may take advantage of the act and it is of uniform operation throughout the state. The act is not passed subject to the approval of any authority other than that of the Genera] Assembly.
 

 While appellant claims that Section 3414-1
 
 et seq.,
 
 General Code, violate Section 26 of Article II of the Constitution, yet we find the following on another subject, in appellant’s-reply brief:
 

 “We have already noted that the instant issue is not of local concern. The statutory enactment in question is to provide special districts throughout the state.”
 

 At another point in appellant’s reply brief it is said:
 

 “The legislature has authority under its general police power to create hospital districts but the method employed in the exercise of that power must comply with certain requirements.” We are of the opinion that the “certain requirements” have been complied with.
 

 As we understand appellant’s claim that the act violates the equal protection of the laws, it is founded upon Section 3414-8, General Code, which provides the manner of joining the joint hospital district by any contiguous township. There is no such question in the present case. “Sufficient unto the day is the evil thereof. ’ ’
 

 Section 2 of Article X of the Ohio Constitution which requires the General Assembly to provide by general law for the election of such township officers as may be necessary, is not. violated, nor is any provision contained in Section 2 of Article XII of the Ohio Constitution impinged upon by any provision of the legisla
 
 *95
 
 tion in question. The creation of special taxing districts for a public purpose is a legislative practice followed and approved in this state. Indeed, appellant in his brief says:
 

 “Plaintiff [appellant] freely admits that the legislature has authority to create special taxing districts for special purposes and raises the above enumerated objections in an effort to point out that in exercising its admitted powers to create special taxing districts the legislature has unlawfully delegated legislative authority. * *
 

 As we'have pointed out, no unlawful delegation of authority is involved and we, therefore, pass over the question of special taxing districts.
 

 Specifically answering the questions presented by appellant:
 

 “1. Are the provisions of General Code Section 2293-19, relating to initial bond legislation under the Uniform Bond Act, mandatory?” Answer: Yes. The record discloses no noncompliance with Section 2293-19, General Code.
 

 “2. May a taxing authority correct, by amendment, bond legislation on which an election has been based, subsequent to such election?” Answer: Records may be changed
 
 mine pro tunc
 
 when it is necessary to make them conform with the actual truth.
 

 “3. Can such correction be made subsequent to such election and after a Common Pleas Court has held the bond legislation preceding the election fatally defective and enjoined further proceedings thereunder?” Answer: The instant case having been appealed to the Court of Appeals, the action of the Court of Common Pleas was not final. While a record may not be manufactured by purporting to show matters that did not occur, it is well settled that a record at any time may be corrected to show the truth and the full truth.
 

 
 *96
 

 “4.
 
 Can the Court of Appeals on hearing a cause
 
 de novo
 
 consider such corrections to validate the proceedings and dissolve the injunction theretofore issued by a Common Pleas Court, at the same time holding with the Court of Common Pleas that the initial legislation was fatally defective and that the injunction in the Common Pleas Court was properly granted, assessing costs in both the Common Pleas Court and Court of Appeals, against the taxing authority?” Answer: The answers to the preceding questions must be considered here. The Court of Appeals found that the record upon which the Court of Common Pleas acted was not a full and correct record and that while the action of the lower court might be justified on the record then before that court, such action was not justified under a full, complete and true record. The question of the assessment of costs in a case like this is a matter resting in the discretion of the court.
 

 “5. To what extent may a public taxing authority go in correcting, by amendment, bond legislation which the Common Pleas Court has held fatally defective after the issuance of an injunction by a Common Pleas Court forbidding further proceedings under said bond legislation and while such injunction is still in full force and effect?” Answer: The answers to the foregoing questions completely answer this one.
 

 “6. Is there a distinction in legal effect between a subsequent correction of a public record to show omissions or mistakes therein and a correction of the proceedings which are the subject of the record in matters of substance?” Answer: This question has also been answered in answers to the preceding questions. There is a distinction between a manufactured record,
 
 i e.,
 
 one that recites as facts matters which did not occur, and a
 
 nunc pro tunc
 
 entry which correctly sets-forth a full and complete record.
 

 
 *97
 
 “7. May a written public record be varied and contradicted by tbe introduction into evidence of a written amendment of such public record when the substance of such amendment would be inadmissible if offered by parol?” Answer: We do not think this question is raised in this case.
 

 “8. Are the provisions of General Code Sections 3414-1
 
 et seq.
 
 a delegation of legislative authority, and therefore unconstitutional and void?” Answer: No.
 

 “9. Do the provisions of General Code Sections 3414-1
 
 et seq.
 
 attempt an exercise of the police power of the state in a manner and form which is unconstitutional and void ? ’ ’ Answer: No.
 

 “10. Do the provisions of General Code Sections 3414-1
 
 et seq.
 
 violate the equal-protection-of-the-laws clause of the Federal and State Constitutions?” Answer : No.
 

 Section 11364, General Code, provides as follows:
 

 “In every stage of an action, the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No judgment shall be reversed, or affected, by reason of such error or defect. In the judgment of any reviewing court upon any appeal in any civil action, when it is sought to reverse any final judgment or decree or obtain a new trial upon the issues joined in the pleadings, such reviewing court shall certify on its journal whether or not in its opinion substantial justice has been done the party complaining, as shown by the record of the proceedings and judgment under review. In case such reviewing court shall determine and certify that in its opinion substantial justice has been done to the party complaining as shown by the record, all alleged errors occurring at the trial shall by such reviewing court be deemed not prejudicial to the party complaining and
 
 *98
 
 shall be disregarded and snch judgment or decree under review shall be affirmed, or it shall be modified if in the opinion of such reviewing court a modification thereof will do more complete justice to the party complaining. In case such reviewing court shall determine and certify that in its opinion substantial justice has not been done to the party complaining as shown by the record such reviewing court shall proceed as provided in section 12223-38 of the General Code.”
 

 All necessary resolutions having been adopted and all necessary steps having been taken prior to the sale of the bonds, we hereby determine and certify that in the opinion of this court substantial justice has been done the party complaining as shown by the record.
 

 Therefore, the judgment of the Court of Appeals should be and hereby is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman and Stewart, JJ., concur.
 

 Hart and Taft, JJ., dissent.