Weygandt, C. J.
The question for determination is whether there has been a substantial compliance with the mandatory procedural provisions of the statutes relating to the issuance of such bonds.
That there has not been a full compliance is conceded.
At its meeting on August 10, 1948, the board of commissioners adopted the following resolution:
“Whereas, the commissioners of Jackson county desire to submit to the electors of Jackson county the question of levying of tax outside the ten mill limitation for the purpose of acquiring a site and erection of a building for a county hospital, and,
“Whereas, this would require a bond issue under the Uniform Bond Act, and,
“Whereas, the estimated amount necessary for the above purpose would be $500,000,
“Therefore, be it resolved that the commissioners of Jackson county submit the question of levy of tax and the issuing of bonds in the amount of $500,000 to the electors of Jackson county at the general election on November 2, 1948.
“These bonds not to exceed interest rate of 3 percent and to be redeemed in the amount of $25,000 each year for a period of twenty years starting with the *404 tax year 1949. The average levy required to be 2 mills which amounts to twenty cents (20c) on each $100 of valuation.
“Therefore, be it further resolved, that the clerk of this board certify a copy of this resolution to the Board of Elections of Jackson County, and the board of elections give notice as required by law.”
This resolution was certified to the board of elections of the county, and at the election on November 2, 1948, the proposal to issue bonds was approved by more than the required 65 per cent of the electors voting on the question.
More than a year and a half later on July 17, 1950, the relator board adopted a further resolution authorizing the issuance and fixing the date, denomination, interest rate and maturity of the bonds. It provides also for a levy of the necessary tax and for offering the bonds to the officers in charge of the sinking fund or bond retirement fund of the county.
The respondents contend that in numerous important respects the relator board failed to comply with the requirements of Section 2293-19, General Code, reading as follows:
“The taxing authority of any subdivision may submit to the electors of such subdivision the question of issuing any bonds which said subdivision has power to issue. When it desires or is required by law to submit any bond issue to the electors, it shall pass a resolution, declaring the necessity of such bond issue and fixing the amount, purpose and approximate date, interest rate and maturity, and also the necessity of the levy of a tax outside of the limitation imposed by Article XII, Section 2 of the Constitution to pay the interest ou and to retire the said bonds. It shall certify such resolution to the county auditor at least sixty days prior to the election at which it is desired to submit such questions. Thereupon and more than *405 fifty days prior to such election the county auditor shall calculate and certify to the taxing authority the average annual levy, expressed in dollars and cents for each one hundred dollars of valuation as well as in mills for each one dollar of valuation, throughout the life of the bonds which will be required to pay the interest on, and retire, such bonds, assuming that they are all issued in one series and that the amount of the tax list of such subdivision remains throughout the life of said bonds the same as the amount of the tax list for the current year, and if this is not determined, the estimated amount submitted by the auditor to the county budget commission. Thereupon the said taxing authority, if it desires to proceed with the issue of said bonds, shall, more than forty days prior to such election, certify its resolution, together with the amount of the average tax levy, expressed in dollars and cents for each one hundred dollars of valuation as 'well as in mills for each one dollar of valuation, estimated by the county auditor, and the maximum number of years required to retire the bonds, to the deputy state supervisors of elections of the county who shall prepare the ballots and make other necessary arrangements for the submission of the question to the voters of the subdivision.”
One of the respondents’ contentions is that the relator board did not “pass a resolution, declaring * * * the necessity of the levy of a tax outside of the limitation imposed by Article XII, Section 2 of the Constitution to pay the interest on and to retire the said bonds.” Unfortunately the original resolution does not conform to this requirement. It does not contain a statement that such a tax levy is a necessity. It is stated simply that the commissioners ‘ ‘ desire ’ ’ to submit to the electors of Jackson county the question of levying a tax. The resolution does contain the statement that “the estimated amount necessary for the *406 above purpose would be $500,000,” but this falls far short of a declaration that such a tax levy is a necessity.
It is contended further that the relator board failed to comply with the requirement that the taxing authority “ shall certify such resolution to the county auditor at least sixty days prior to the election at which it is desired to submit such questions.” (Italics supplied.) The board admits that no written certificate was issued by it to the auditor before the election. It is sought to excuse this omission as a minor irregularity, first, by the fact that the auditor was present at the meeting on August 10, 1948, and therefore must have been furnished with a copy, and, second, by the fact that according to the evidence a written certificate was issued to the auditor in July, 1950 — approximately two years after the resolution was adopted and more than a year and a half after the election. The mere statement of these suggestions is their best refutation. In clear, inescapable language it is provided in the statute that the taxing authority shall certify the resolution to the auditor at least 60 days prior to the election. This is an important step in the mandatory procedure, and the relator board obviously did not follow it.
A third contention is that the auditor did not comply with the requirement that “more than fifty days prior to such election the county auditor shall calculate and certify to the taxing authority the average annual levy * * * which will be required to pay * * * such bonds * * (Italics supplied.) Again it is conceded that no written certificate was issued by the auditor until July, 1950 — nearly two years after the adoption of the original resolution and - more than a year and a half after the election; and the journal of the relator board fails to disclose even this.
The relator board relies on the decision of this *407 court in the case of State, ex rel. Wuebker, v. Bockrath, 152 Ohio St., 77, 87 N. E. (2d), 462. That case is readily distinguishable on the facts. No defect was found in the original resolutions, and a joint township district hospital board was held to have authority to enter a nunc pro tunc correction to make its record conform to the truth. No such question is involved in the instant case.
Inasmuch as the relator board clearly has failed to follow the mandatory procedure required for the issuance of such bonds, the writ of mandamus must be denied.

Writ denied.

Zimmerman, Middleton, Taet, Matthias and Hart, JJ., concur.
Stewart, J., not participating.