Weygandt, C. J.
The petition and answer are of great length and will not be repeated here.
The first question of law presented by the pleadings is the contention of the relator that Amended Substitute Senate Bill No. 193, 101st General Assembly, now Chapter 4582, Revised Code, did not become effective until September 29, 1955, thus vitiating all actions taken thereunder prior to that date.
The agreed facts seem to be that the bill was finally enacted by the Senate and the House of Representatives on June 30, 1955, approved by the Governor and filed in the office of the Secretary of State on the same day. The bill contained an emergency clause, and in the House of Representatives a separate roll call was had thereon. It was duly accorded the necessary vote of two-thirds of all the elected members. However, in the Senate, for some unexplained reason, a separate roll call on the emergency clause unfortunately was neglected. On the first roll call the bill itself did receive more than a two-thirds vote, but this, of course, did not meet the requirement *441 of Section Id of Article II of the Constitution of Ohio for a separate roll call on the emergency feature alone. Hence, the new law was subject to a referendum within 90 days under the provisions of Section lc of Article II.
No such referendum was attempted, but since the new law did not go into effect until 90 days after it was filed by the Governor in the office of the Secretary of State on June 30, 1955, namely, not until September 29, the relator contends that the actions taken before the latter date in an effort to create the Toledo-Lucas County Port Authority were consequently null and void, and that no corporation came into legal existence.
Is this correct?
The necessary resolution was adopted by the Board of County Commissioners on July 12, 1955, and the council of the municipality enacted the necessary ordinance three days later. Each became effective immediately. The ordinance authorized the Mayor and City Manager of Toledo to execute an agreement with Lucas County for the appointment of a board of directors for the new corporation, the Toledo-Lucas County Port Authority, and this contract was accomplished on July 18. Pursuant to the resolution, the ordinance and the agreement, nine directors were promptly appointed. The only additional action taken prior to September 29 was the adoption by the board of directors of a resolution determining the necessity for a tax levy in excess of the ten-mill limitation and submitting the matter to the electorate at the general election on November 8, 1955. These are the actions which the relator claims were null and void because they were taken during the 90-day period while the new law was susceptible to a referendum.
Since no referendum was attempted within the 90-day period, the respondents rely on the decisions of this court in the cases of County of Miami v. City of Dayton, 92 Ohio St., 215, and State, ex rel. Duncan, Pros. Atty., v. Franklin County Conservancy District, 92 Ohio St., 237, 110 N. E., 726. Those cases involved the constitutionality of the so-called Conservancy Act of 1914 which was attempted to be passed as an emergency *442 measure. However, in the House of Representatives the bill failed to receive the necessary two-thirds majority. Nevertheless immediate action was taken to organize the new conservancy district, and there was a total of five steps before the expiration of the 90-day referendum period. In the instant case there were only three steps taken during that period. There as here, no referendum was held. There this court decided that the proceedings were not subject to attack after the 90-day period had expired and with it the right for a referendum. In the opinion it was said:
“It being conceded that this act had a majority vote in both houses and that no attempt was made to invoke the referendum provisions of the Constitution thereon, then at the end of the 90-day period the same became a valid law as enacted. The time within which a referendum might be invoked, as provided by the Constitution, had elapsed. The right to have the same referred to the people for judgment had been lost and it was too late thereafter to attack the emergency character-of that act, either as to the vote thereon, or otherwise.”
The relator here concedes the applicability of the decisions in the Miami and Duncan cases, supra, but urges that they be overruled. This the court is unwilling to do. Hence, it is the view of the court that the proceedings taken to organize the Toledo-Lucas County Port Authority are not subject to this attack.
It is the further contention of the respondents that any possible defects in the allegedly premature incorporation of the Port Authority have been cured by the consistent subsequent actions of both the city and the county ratifying the earlier actions. Among the subsequent actions were the filling of expiring terms on the board of directors; the appropriation of $100,000 by the Board of County Commissioners as the county’s share of the cost of a marina and anchorage basin, and appropriating a like sum of $100,000 for the city’s share of the cost thereof; and the adoption of a city ordinance on August 6, 1958, authorizing the construction of a water line *443 to extend approximately 1,000 feet into the property of the Port Authority, and appropriating funds therefor under a further agreement to be executed with the Port Authority. The effect of these consistent actions is difficult to reconcile with the present attack on the validity of those proceedings after a delay of more than three years.
The relator’s next contention is that under Chapter 4582, Revised Code, the General Assembly has delegated legislative authority by authorizing the creation of a port authority, as a body corporate and politic, without providing any standards to guide a city or county in deciding whether the provisions of the act will be made effective as to the territory to be embraced. In the case of State, ex rel. Wuebker, v. Bockrath et al., Trustees, 152 Ohio St., 77, 87 N. E. (2d), 462, a similar question was presented involving the authority of boards of trustees of contiguous townships to exercise their discretion to create a hew political subdivision known as a joint township hospital district. In paragraph nine of the syllabus, this court held:
<‘9. Sections 3414-1 to 3414-8, General Code, both inclusive (119 Ohio Laws, 354, 122 Ohio Laws, 411), authorizing the establishment of joint township hospital districts, do not violate any provision of the state or federal Constitution and are therefore valid.”
In this respect the court finds no substantial difference between that case and the instant one.
The relator’s next complaint is that primarily Chapter 4582, Revised Code, authorizes (1) the levy of a tax for a private purpose, (2) the use of public funds and property for a private purpose, and (3) the appropriation of private property for a private use, contrary to Section 19 of Article I of the Constitution of Ohio. This contention is based on the conceded intention to lease the acquired land to two private corporations for terms of years. It is insisted that this constitutes a subsidy of the two corporations and accomplishes a union of public and private property. To the contrary the respondents contend that not only is this not the primary purpose of the Port *444 Authority but that the sole purpose of the plan, improvements and leases is to meet the public need and demand for enlarged shipping facilities. In the second paragraph of the syllabus in the case of State, ex rel. Gordon, City Atty., v. Rhodes, Mayor, 156 Ohio St., 81, 100 N. E. (2d), 225, this court held:
“2. The determination of what constitutes a public municipal purpose is primarily a function of the legislative body of the municipality, subject to review by the courts, and such determination by the legislative body will not be overruled by the courts except in instances where that determination is manifestly arbitrary or unreasonable.”
In the instant case the court finds no factual basis for disturbing the determination by the city and county of the existence of a public purpose.
The relator’s final contention is that Chapter 4582, Revised Code, authorizes the raising of public money for or the lending of public credit to or in aid of private companies, corporations or associations contrary to Section 6 of Article VIII of the ' Constitution of Ohio. However, the emphatic response of the respondents to this argument is that the leases, “all made in carrying out the public purpose of the Authority and to effectuate its plan of development of the Port, and the proposed issuance of bonds to finance the grain elevator facilities, do not in any respect constitute the lending of aid or credit to private corporations. There is here involved the leasing of public property for public purposes for limited periods, such property to remain the property of the Authority and to be under its control. During the term of the leases the lessees must devote the properties to the purposes intended in connection with the development of the Port and must pay rental adequate as determined by the Authority. There is no commingling whatever of public and private property in a single enterprise.” The agreed facts warrant these conclusions of the respondents. State, ex rel. Bruestle, City Solicitor, v. Rich, Mayor, 159 Ohio St., 13, 110 N. E. (2d), 778.
Hence, the relator’s demurrer to the respondents’ answer *445 is overruled. In view of the stipulation that the ruling on the demurrer shall he dispositive of the case, the writ of quo warranto is denied, and judgment is rendered for the respondents.

Writ denied.

Zimmerman, Bell and Herbert, JJ., concur.
Peck, J., not participating.