THE STATE, EX REL. HARPER, APPELLANT, *v.* BOARD OF EDUCATION OF BATH-RICHFIELD LOCAL SCHOOL DISTRICT, APPELLEE.

[Cite as State, ex rel. Harper, v. Bd. of Edn., 7 Ohio St. 2d 49.]

(No. 39898—Decided June 29, 1966.)

*Messrs. Johnson, Whitmer & Sayre* and *Mr. Raymond W. Eaton,* for appellant.

*Mr. James V. Barbuto,* prosecuting attorney, *Mr. John D. Smith* and *Mr. Rice A. Hershey,* for appellee.

HERBERT, J. The relator's basic claim is that he is entitled to a limited contract of re-employment because he claims that he is "deemed re-employed" under the provisions of Section 3319.11 of the Revised Code. That section provides in part as follows:

"Any teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, *deemed, re-employed* under the provisions of this section . . . *unless the employing board, acting on the superintendent's recommendation* as to whether or not the teacher should be re-employed, *gives such teacher written notice* of its intention not to re-employ him on or before the thirtieth day of April." (Emphasis added.)

The relator argues (1) that the employing board did not act on the superintendent's recommendation because the superintendent never made a recommendation to the board as such but rather made it only to the executive head of the local school district, and (2) that the employing board never gave the relator a written notice and that the only notice ever received was from the executive head.

Admittedly, the statute requires that the superintendent make a recommendation to the board, and that the board notify the teacher that his employment will be terminated. Hence, the question is presented whether the executive head of the local school district may act as agent of the employing board.

The executive head is employed by the board pursuant to a statutory grant of authority. Section 3319.02 of the Revised Code provides in part as follows:

"Upon recommendation of the county superintendent, a local board may at a regular meeting employ a person of proper certification or a person holding or qualified to hold the position of executive head of a local school district on September 16, 1957, as executive head for a period not to exceed five years

beginning with the first day of August and ending on the thirty-first day of July.''

The county superintendent testified that ''executive head is the official who carries out the work of administering the policies of the board of education.'' He testified further that there was a ''working understanding'' between him and each of the executive heads of the 12 districts within Summit County that each would communicate his recommendations on the re-employment of teachers to the respective employing boards. In the instant case, the county superintendent directed the executive head, Mayer, to communicate his recommendation not to re-employ the relator to the board, and Mayer did so. As the county superintendent phrased it, ''I made a recommendation to the board of education through their executive head.'' Certainly it was within the board's authority to permit an agent to receive communications on its behalf. Such an agent's duties would be purely ''mechanical'' and ''ministerial.'' Such duties may be subdelegated to an executive head as is the custom in the 12 districts of the county. 3 American Jurisprudence 2d, Agency, Sections 150 and 151; 2 Ohio Jurisprudence 2d, Agency, Section 83. The act of the executive head was thus the act of the board.

Likewise, after the board decided not to re-employ the relator on April 8, 1965, the executive head gave ''written notice'' of this fact to the relator. Certainly the rendering of such notice by letter is one reason why an executive head is employed. He was carrying out a policy decision of the board. Since it was a ministerial and customary duty, the subdelegation was proper, and the act of the executive head was the act of the board.

Moreover, in this case, it seems doubtful that such written notice would be necessary since the relator was well aware of the fact that his employment would be terminated, as his letter of March 29, 1965, heretofore referred to, indicated.

Lastly, the relator asserts the invalidity of the board's action on July 27, 1965, to amend its resolution of April 8, 1965, to make express (1) that the relator was not to be re-employed, and (2) that the executive head had authority to send written notice to the relator on behalf of the board. The *nunc pro tunc*

amendment says that these points were "intended and understood" at the April meeting. The relator does not dispute that a record may, by present amendment, be made to reflect a past action which was actually taken but either omitted from, or erroneously stated in, the past record. See *State, ex rel. Wuebker,* v. *Bockrath et al., Trustees* (1949), 152 Ohio St. 77.

There was, in fact, a record made on April 8, 1965, which had attached to it a list of all the teachers that were to be employed or re-employed in the following year. The relator's name was absent from that list. Thus the relator's argument raises only the factual question whether the board did actually act on the relator's employment status for the following year. There is ample evidence in the record (such as the board's resolutions, passed prior to the filing of this action, which expressly confirmed the decision not to re-employ the relator) to support the conclusion of the Court of Appeals that the board did act on the relator's employment status. There is no evidence which would support a contrary finding.

For these reasons, the judgment of the Court of Appeals, denying the writ, is affirmed.

*Judgment affirmed.*

Taft, C. J., Zimmerman, Matthias, O'Neill, Schneider and Brown, JJ., concur.