Robinson, J.
 

 This is an original action in this court, brought by the state of Ohio on relation of the prosecuting attorney of Wayne county against the auditor of Ashland county, to require the auditor of Ashland county to advertise for sale the joint bonds of Wayne and Ashland counties to provide funds for “straightening, deepening, and widening the Mohican river, the Muddy Fork of the Mohican river and the Jerome Fork of the Mohican river,” a project undertaken under favor of the provisions of Section 6536 and succeeding sections, General Code, and designated as joint county ditch improvement No.-, in anticipation of the collection of assessments levied against lands specially benefited and against political subdivisions specially benefited.
 

 
 *644
 
 The petition avers, among other things, that “such proceedings were had that the joint board of county commissioners met from time to time as required by the statutes, and took as required by law each and every step and measure, and performed each and every act imposed by law, so that in the end, pursuant to the statutes governing drainage, title 3, chapter 1, and title 3, chapter 2, of the General Code of Ohio, being Section 6442 to and including Section 6545 of the General Code, that the prayer of the petition was granted
 
 * * * ■
 
 that the assessments in proportion to benefits were duly and properly assessed and certified to the several county auditors; that it was determined to issue bonds for the payment of said improvement in anticipation of the collection of said assessments; that the engineer was ordered to advertise for bids; that bids were received, and a contract for the making of said improvement was let, executed, and entered into and all necessary proceedings in all respects in conformity to the. statute.”
 

 The petition also contains a copy of the resolution of the joint board of county commissioners of the two counties wherein the joint board resolved to issue “the bonds of the interested counties,” and resolved “that it is now necessary in anticipation of the levy and the collection of the assessments heretofore made for public benefit and upon benefited lands to issue and sell the bonds of Wayne and Ashland counties in the aggregate sum of $63,500.”
 

 The respondent auditor filed an answer, in which he set up the defense that “the joint county
 
 *645
 
 ditch law of Ohio does not provide for the issuance of bonds, and that therefore any issuance of bonds thereunder is without authority and void.” Second, that, “if said authority to issue bonds is implied from the general provisions of the joint county ditch law, in that event, the same would be lending the credit of one subdivision of the state to the other, and in violation of the provisions of the Constitution of the state of Ohio.”
 

 The whole confusion in this controversy grows out of the failure of the respective parties hereto to recognize the fact that the Legislature, by the enactment of Sections 6536 to 6542, inclusive, created, for the special purpose of a joint county improvement, a special taxing district, and out of the attempt upon the part of the parties hereto to preserve the political subdivisions of counties as separate entities in the construction of an improvement by a special taxing district.
 

 The creation of special taxing districts by the Legislature is not new in this state. Indeed, it has been a recognized power of the Legislature practically from the time of the organization of the state. Our whole public school system is operated by special taxing districts, created within, or overlapping, political subdivisions. The provision for sanitary sewer districts provides for the creation of special taxing districts from territory entirely within a political subdivision or from territory including all or a part of several political subdivisions. The provision for conservancy districts disregards the lines of political subdivisions, and authorizes the creation of special taxing districts, including the whole or a part of many
 
 *646
 
 political subdivisions. There are perhaps others, but in each of the examples mentioned the political subdivisions and their officers are used as agencies through which the funds of the special taxing district are collected.
 

 When the special taxing district created for the special purpose of a joint county improvement is viewed as such, and not as several integral parts, all the difficulty with regard to including legislation enacted for single county ditches in this legislation, by reference, and all the difficulty in regard to the question of pledging the faith and credit of one county for payment of the debts of another, and also the question of loaning credit, disappear.
 

 By Section 6536, General Code, the Legislature provided that, when a joint county improvement that will benefit or damage land in more than one county is proposed to be located, the proceedings shall be conducted by a joint board of county commissioners, consisting of the members of the boards' of commissioners of the several counties interested, and that the petition for the improvement may be filed in any of the interested counties. By Section 6537, General Code, the Legislature provided that “the joint board of county commissioners may do and perform all the things that the commissioners may do in a single county improvement * * *. The proceedings for a joint county improvement shall proceed before said joint board the same as if said joint board were a board of county commissioners representing' a county that included all the territory of all the counties represented by the commissioners on said joint board.”
 

 In Section 6541, General Code, in defining the
 
 *647
 
 duties of surveyors with reference to such joint county improvement, the Legislature provided:
 

 “In making up the schedules and reports the surveyors shall proceed to make such schedules and reports of such improvement the same as if the improvement were an improvement within a county of the size of the several counties interested in the proposed improvement.”
 

 The same section provides that the joint board may designate any one of the surveyors of the interested counties to do the field work and make the survey and estimates, and makes the surveyors of the other interested counties assistants to him; provides that the surveyor so selected shall let the contract, inspect the progress of the work, and make estimates and reports on the progress.
 

 Section 6542, General Code, provides that the auditor and treasurer of the county in which the petition is filed shall
 
 ex officio
 
 become the fiscal agents of all the counties interested, and that such auditor shall certify to the auditor of the other counties a schedule of the assessments to be levied, etc., thus making the auditor and treasurer of the county in which the petition is filed the auditor and treasurer for the special taxing district, composed of two or more counties, and making the auditor and treasurer of the other interested counties subordinate to, and assistants to, such auditor and treasurer.
 

 When, therefore, the territory of the several counties interested in a joint county improvement is considered not as a group of counties acting separately to further a joint enterprise, but as a special taxing district constituting a single entity, the
 
 *648
 
 officers of which act, not as county officers, but as officers of a special taxing district, there is no difficulty in effectually carrying the provision of Section 6464, General Code, “the commissioners are empowered and authorized to issue and sell the bonds of the county,” into Section 6537, General Code, by the provision therein that “the joint board of county commissioners may do and perform all the things that the commissioners may do in a single county improvement,” thereby authorizing the joint board to issue and sell the bonds of the special taxing district in anticipation of the collection of assessments levied according to benefits and to pledge the faith and credit of the entire district to the payment thereof, since the power conferred, by reference, was the power conferred upon a county board to issue and sell the bonds of its entire district, the county, and the power to pledge the faith and credit of its entire district, the county, to the payment thereof. The bonds so authorized to be issued and sold by the joint board are not the bonds of the interested counties, as such, but are the bonds of the special taxing district, a single entity, irrespective of the fact that such single entity has been created of and includes the entire territory which for other purposes has been divided into several separate entities. The pledging of the faith and credit of the special taxing district thus created for the payment of the bonds of the district is not the pledging of the faith and credit of one county for the indebtedness of another, but is the pledging of the' faith and credit of the district for the district’s own indebtedness, incurred for its own wel
 
 *649
 
 fare; and the fact that it is authorized to recoup its expenditures by levying special assessments upon property specially benefited does not make its indebtedness, incurred for its own welfare, any less its own indebtedness.
 

 That the Legislature in the exercise of its police power has the authority for special purposes to create taxing districts other than the political subdivisions, or to create taxing districts overlapping the political subdivisions recognized and provided for in the Constitution, has been directly or impliedly held in many cases, such as
 
 Bowles
 
 v.
 
 State,
 
 37 Ohio St., 35;
 
 Chesbrough
 
 v.
 
 Commissioners,
 
 37 Ohio St., 508;
 
 County of Miami
 
 v.
 
 City of Dayton,
 
 92 Ohio St., 215, 110 N. E., 726.
 

 That the Legislature has power to authorize the commissioners of a county to pledge the faith and credit of the entire county for the payment of bonds issued and sold in anticipation of the collection of assessments upon property specially benefited was held in the case of
 
 State
 
 v.
 
 Commissioners,
 
 37 Ohio St., 526, and has been consistently adhered to ever since.
 

 The effectiveness of legislation by reference has been so generally recognized in Ohio that no very specific declaration appears in the reported cases. As far back as the case of
 
 Heirs of Ludlow
 
 v.
 
 Johnston,
 
 reported in 3 Ohio, 553, 17 Am. Dec., 609, it was declared, in referring to legislation by reference:
 

 “For this purpose the law referred to is, in effect, incorporated with and becomes a part of the one in which the reference is made, and so long as that statute continues, will remain a part of it.”
 

 
 *650
 
 And as. recently as the case of
 
 State ex rel.
 
 v.
 
 Zangerle, Aud.,
 
 101 Ohio St., 235, 128 N. E., 165, this court applied Section 26, General Code, to contemporaneous and all subsequent legislation. It is a class of legislation so generally recognized in the various state jurisdictions, and in the jurisdiction of the United States, that we think the rule may safely be stated that such legislation is effective wherever it is not by constitutional provision expressly prohibited. At any rate, in Ohio it is a recognized mode of legislation.
 

 However, notwithstanding the conclusion we have reached that the Legislature has the power to create a special taxing district for a special purpose, such as for the purpose of the construction of a joint county improvement, and has the power to officer such special taxing district with incumbent officers of interested counties, and impose upon the officers of such special taxing district authority to perform such functions with reference to such special taxing district as the construction of a joint county improvement, and to provide for the payment of the expenses of such construction by levying assessments upon property specially benefited, and to issue and sell the bonds of such district, and pledge the faith and credit of such district to the payment thereof, and to finance such construction in anticipation of the collection of such assessments, and has effectively exercised such power, and has enacted the necessary legislation to accomplish such purpose, the writ will not issue in this case, because of the fact that the joint board of commissioners, in its resolution declaring the necessity for the sale of bonds in anticipation of the collection of assess
 
 *651
 
 ments, and declaring the terms thereof, provided that “the auditor of Ashland county, Ohio, is authorized and directed to advertise for sealed bids and sell said bonds as provided by Sections 2294 and 2295 of the General Code, and said bonds and the interest thereon to the amount of and extent of $23,598.97, which is the total portion of the cost of Ashland improvement assessed against the public and private property in said county shall be the full and general obligations of said county, for the payment of which, when due, the full faith, credit, and revenues of said county are hereby pledged. And said bonds and the interest thereon to the amount of and extent of $39,900, which is the total portion of the cost of said improvement assessed against the public and private property in Wayne county, shall be the full general obligations of said county, for the payment of which, when due, the full faith, credit, and revenues of said counties are hereby pledged.”
 

 Whatever right the counties of Ashland and Wayne may have to apportion between themselves any deficiency which may arise by reason of the failure of the officers of the special taxing district to collect sufficient of the assessments to meet the obligations of the district, such officers are without power to limit the liability of any portion of the district upon such bonds. Because of such limitation, the writ in this case is denied.
 

 Writ denied.
 

 Marshall, C. J., Jones, Matthias, Dat, Allen and Kinkade, JJ., concur.