DESENCO, INC. ET AL., APPELLANTS, *v.* CITY OF AKRON ET AL., APPELLEES.

[Cite as *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535.]

(No. 98–162—Submitted December 15, 1998—Decided March 10, 1999.)

*Slater & Zurz* and *Richard V. Zurz, Jr.,* for appellants.

*Thompson Hine & Flory L.L.P., Leslie W. Jacobs, Stephen L. Buescher* and *Kenneth G. Cole,* for appellees city of Akron et al.

*Max Rothal,* Director of Law, and *Cheri Cunningham,* Assistant Director of Law, for appellees city of Akron, Donald L. Plusquellic, and Richard A. Merolla.

*Robert A. Edwards,* for appellee Copley Township.

*Goldman & Rosen, Ltd.,* and *Irving B. Sugerman,* for appellees Springfield and Coventry Townships.

---

ALICE ROBIE RESNICK, J.   Appellants challenge the statutes that allow for the establishment of joint economic development districts ("JEDDs") on four constitutional grounds: (1) that the statutes improperly delegate the power to levy taxes, (2) that the statutes violate the Uniformity Clause of the Ohio Constitution, (3) that the statutes deny equal protection as guaranteed by the United States and the Ohio Constitutions, and (4) that the statutes violate due process as guaranteed by both Constitutions.

In 1993, the General Assembly adopted legislation that allowed for the creation of JEDDs in order to facilitate economic development to create or preserve jobs and employment opportunities, and to improve the economic welfare of the people in the state.   144 Ohio Laws, Part IV, 5776; R.C. 715.70(B)(1) and 715.71(B). R.C. 715.70 and 715.71 set forth the requirements and alternative procedures for establishing these districts.   One or more townships located within a county that has adopted a charter under Sections 3 and 4, Article X of the Ohio Constitution may contract with one or more municipalities that are similarly located to form a JEDD. R.C. 715.70(A) and (B)(1); 715.71(B).   The created district must be located within the territory of one or more of the contracting parties and may consist of all or a portion of that territory.   R.C. 715.70(B)(1) and 715.71(B).   The contract must set forth or provide for the amount or nature of the contribution of each municipal corporation and township to the development and operation of the district and may provide for the sharing of the costs of the operation of and improvements for the district.   R.C. 715.70(D)(1) and 715.71(F).   For three years following the filing of the contract establishing the JEDD, no municipality may annex the territory of the JEDD unless each board of township trustees whose territory is included, in whole or part, within the district and the territory proposed to be annexed adopts a resolution consenting to the annexation proceeding.   R.C. 715.70(B)(5) and 715.71(H).

The involved municipalities and townships must each give notice of the proposed contract and then hold a public hearing prior to adopting ordinances and

resolutions approving the contract. R.C. 715.70(D)(2) and 715.71(C). If the procedure set forth in R.C. 715.70 is used, any such resolution adopted by a township board of trustees shall be subject to a referendum by the electors of the township. R.C. 715.70(D)(3). If the procedure set forth in R.C. 715.71 is used, the voters of each participating township must approve the resolution of its board of trustees approving the JEDD contract. R.C. 715.71(E).

Under the R.C. 715.70 procedure, the involved municipalities and townships then must file a petition with the legislative authority of each county within which a party to the contract is located. R.C. 715.70(C)(1). The county legislative authority must hold a public hearing and then certify the adequacy of the petition. *Id.* If the county takes no action within a certain time period, the petition is deemed approved and the contract goes into effect no sooner than thirty days after that approval. *Id.* See, also, Meck & Pearlman, Ohio Planning and Zoning Law (1998) 648, Section 15.34. Under the procedure of R.C. 715.71, the involved municipalities and townships must file with the county the documents listed in that division. The resolution of the board of township trustees is then submitted to the electors of the township for approval. R.C. 715.71(E).

Once created, the district is governed by a board of directors established by the contract; the members of the board must be appointed from among the elected members of the legislative authorities and the elected chief executive officers of the contracting parties. R.C. 715.70(E) and 715.71(A). The contract shall set forth the duties, powers, and functions of the board and may also grant to the board the power to adopt a resolution to levy an income tax within the district "for the purposes of the district and for the purposes of the contracting municipal corporations and townships pursuant to the contract." R.C. 715.70(F) and 715.71(G). This income tax may be no greater than the highest rate levied by a municipality that is party to the contract. *Id.* If the JEDD was created pursuant to R.C. 715.70, the tax is subject to a referendum or initiative by the electors of the district. R.C. 715.70(F)(1) and (2). If the alternative procedure set forth in R.C. 715.71 was used to create the JEDD, then no vote is required by the electors residing in the district. R.C. 715.71(G).

In 1995, the General Assembly enacted R.C. 715.72 through 715.81, adding more alternative procedures and requirements to those set forth in R.C. 715.70 and 715.71. 146 Ohio Laws, Part II, 3219, 3229–3239. These newer provisions do not affect our decision and opinion today.

I

In *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182, 184, we set forth the proper standard of review for a case that was dismissed pursuant to Civ.R. 12(B)(6):

"The factual allegations of the complaint and items properly incorporated therein must be accepted as true. Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. It must appear beyond doubt that plaintiff can prove no set of facts entitling her to relief. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus."

When reviewing the constitutionality of legislation, this court must presume the statutes to be constitutional. *Hughes v. Ohio Bur. of Motor Vehicles* (1997), 79 Ohio St.3d 305, 307, 681 N.E.2d 430, 432, citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59. In *Hughes*, we continued:

"In reviewing a statute, a court, if possible, will uphold its constitutionality. *Winslow–Spacarb, Inc. v. Evatt* (1945), 144 Ohio St. 471, 475, 30 O.O. 97, 99, 59 N.E.2d 924, 926. All reasonable doubts as to the constitutionality of a statute must be resolved in its favor. *Dickman.* Courts have a duty to liberally construe statutes in order to save them from constitutional infirmities. *Wilson v. Kennedy* (1949), 151 Ohio St. 485, 492, 39 O.O. 301, 304, 86 N.E.2d 722, 725." *Hughes*, 79 Ohio St.3d at 307, 681 N.E.2d at 432.

Before we can declare a statute unconstitutional, " 'it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 47, 554 N.E.2d 97, 98, quoting *Dickman* at paragraph one of the syllabus.

## II

In appellants' first challenge to the statutes establishing JEDDs, they assert that the statutes unconstitutionally delegate the General Assembly's power to levy taxes. The General Assembly's power to legislate is limited solely by the state and federal Constitutions. *State ex rel. Swetland v. Kinney* (1982), 69 Ohio St.2d 567, 573, 23 O.O.3d 479, 483, 433 N.E.2d 217, 222; *Angell v. Toledo* (1950), 153 Ohio St. 179, 181, 41 O.O. 217, 218, 91 N.E.2d 250, 251. This plenary power includes the power to levy taxes. *Weed v. Franklin Cty. Bd. of Revision* (1978), 53 Ohio St.2d 20, 21, 7 O.O.3d 63, 64, 372 N.E.2d 338, 338; *Saviers v. Smith* (1920), 101 Ohio St. 132, 128 N.E. 269, paragraph one of the syllabus.

This court has repeatedly held that pursuant to this plenary power, the state may establish special districts and boards of directors to administer the districts, and the state may grant these boards various duties and powers, including the power to levy taxes within the district. *State ex rel. Bryant v. Akron Metro. Park Dist.* (1929), 120 Ohio St. 464, 166 N.E. 407, affirmed (1930), 281 U.S. 74, 50 S.Ct. 228, 74 L.Ed. 710 (park districts. and boards of park commissioners). See,

also, *State ex rel. McElroy v. Baron* (1959), 169 Ohio St. 439, 8 O.O.2d 457, 160 N.E.2d 10 (port authorities); *State ex rel. Wuebker v. Bockrath* (1949), 152 Ohio St. 77, 39 O.O. 389, 87 N.E.2d 462, paragraph nine of the syllabus (joint township district general hospital and district hospital boards); *State ex rel. Fritz v. Gongwer* (1926), 114 Ohio St. 642, 151 N.E. 752 (joint county ditch improvement districts).

In *Bryant*, this court explained the purpose behind the creation of these special districts:

"In the complexity of our advancing civilization, in the wide differences in conditions in different localities in the same state, and in the ever-changing conditions in a given locality, the Legislature has found it necessary to content itself with declaring the principles governing a general public purpose, and to confer upon existing local officials, or upon local boards to be created in a designated manner, the authority to provide, within definite limitations, rules and regulations to execute the general purpose expressed in the law itself. It does not argue against the completeness of the law that a given locality or district may or may not at its option avail itself of the provisions of the law. Statutes are sometimes peremptory and mandatory, and sometimes optional and permissive. One locality may have no need of governmental activity along a given line, while another locality in the same state may have an urgent need. That need must be ascertained and declared by means and methods prescribed by the law itself, which must be scrupulously followed. While the Legislature may not delegate to any other power the right to declare principles and standards, or general public policy, it may delegate to other competent agencies the power to determine whether or not they will avail themselves of the privileges conferred, and also delegate to certain named executive or administrative agencies authority involving discretion in relation to the execution of the law.

" * * *

"The creation of boards and commissions has become a familiar means in recent periods to perform the executive functions which are essential to the administration of laws. Parks and reservoirs for conservation of natural resources are for the public welfare, and the general policy of creating them, and the methods of doing so, are subject-matters of legislation. It is axiomatic that they cannot be created or maintained without the expenditure of money. Not being in that class or character of public improvement where assessments can be made upon property in the vicinity by reason of special benefits, that method of providing funds is not available. Manifestly a levy of taxes upon all the property in the state cannot be made to create and maintain a district park. It is inevitable, therefore, that a district levy must be made * * *." *Bryant*, 120 Ohio St. at 478–480, 166 N.E. at 411–412.

The *Bryant* court went on to analyze the power of various governmental entities to levy and collect taxes for public purposes, concluding that "[t]he power of taxation is therefore a sovereign power and a legislative power, but the exercise of that power calls for certain administrative functions as indispensable to a wise and economical administration of public affairs." *Id.* at 482, 166 N.E. at 412–413. The court held that "the [Ohio] Constitution has fully authorized the Legislature to create districts, as separate political subdivisions, and to create boards to exercise the governmental activities of the district, and to utilize such boards as fact-finding agencies, and to determine the financial needs of such districts, and to impose and collect taxes to defray the same." *Id.* at 490, 166 N.E. at 415.

As it did with the park districts at issue in *Bryant*, the General Assembly has declared "the principles governing a general public purpose," that of using JEDDs to improve the economic welfare of people in those districts. To effectuate that purpose, the General Assembly conferred upon local boards, created in a designated manner, the authority to provide, within definite limitations, rules and regulations, which necessarily include taxing authority. As the *Bryant* court stated, the authority to execute a general purpose includes the authority to confer the power to tax within the district.

Appellants assert that by authorizing the creation of JEDDs, the General Assembly has unconstitutionally created a way for townships to tax income, when they ordinarily are not authorized to do so. Appellants are correct in stating that townships cannot ordinarily tax income. See, generally, 3 Shimp, Baldwin's Ohio Township Law (1991) 134, Section 31.29. However, as we held above, a JEDD is a special taxing district, independent of the individual governmental entities that contracted to form the JEDD, and the board of the JEDD derives its authority to tax directly from the General Assembly, not the township. Thus, the townships are not taxing income through a JEDD, but rather the JEDD entity through its board is taxing income on authority of the General Assembly.

Appellants also argue that *Bryant* is distinguishable from the case *sub judice* because the park district in *Bryant* was authorized to tax *real estate*, not to tax *income* as the JEDDs are authorized to do. However, the reasoning that the court used in *Bryant* applies no matter what the type of tax involved. The General Assembly identified a general public purpose and conferred upon a local board the specific authority to execute the general purpose expressed in the law itself. As noted above, the General Assembly has plenary power to legislate and that includes the power to create a special district with the power to levy a tax, regardless of the type of tax.

Appellants also assert that individuals and businesses who are required to pay the income tax are never allowed to vote on the tax. However, very often

individuals work in political subdivisions in which they do not live. They do not vote in the subdivision in which they work; rather, they vote in the subdivision in which they live. There is no right to vote in the subdivision in which an individual works. These people benefit from the services the taxing authority of their work place provides, those services being paid for by the tax on their income. See *Angell,* 153 Ohio St. at 185, 41 O.O. at 220, 91 N.E.2d at 253. Likewise, appellants benefit from the services provided in the district by the JEDD board. As in *Angell,* we do not find that this situation creates an unlawful tax.

## III

Appellants next challenge the JEDD statutes as violating the Uniformity Clause of the Ohio Constitution. Because R.C. 715.70 and 715.71 apply only to certain municipalities and townships,[2] see R.C. 715.70(A)(1), (2), and (3), appellants contend that that statutes are both of a special nature and do not operate uniformly throughout the state.

The Uniformity Clause, Section 26, Article II, states: "All laws, of a general nature, shall have a uniform operation throughout the state * * *." The constitutionality under this clause of legislation is a two-part test: (1) whether the statute is a law of a general or special nature, and (2) whether the statute operates uniformly throughout the state. *Put–In–Bay Island Taxing Dist. Auth. v. Colonial, Inc.* (1992), 65 Ohio St.3d 449, 451, 605 N.E.2d 21, 22; *Austintown Twp. Bd. of Trustees v. Tracy* (1996), 76 Ohio St.3d 353, 356–357, 667 N.E.2d 1174, 1177; *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 137–138, 568 N.E.2d 1206, 1212–1213.

In *Hixson v. Burson* (1896), 54 Ohio St. 470, 481, 43 N.E. 1000, 1001–1002, this court set forth the test to determine whether a statute's subject matter is of a general or special nature:

"[E]very subject of legislation is either of a general nature on the one hand, or local or special on the other. It can not be in its nature both general and special, because the two are inconsistent. If it is of a general nature, the constitution requires that *all* laws—not *some* laws—on that subject shall have a uniform operation throughout the state.

---

2. In 1995, the General Assembly adopted R.C. 715.72 through 715.81, which, among other changes, allows for municipalities and townships located in counties that have not adopted a charter to contract to create JEDDs. See R.C. 715.72(B); 146 Ohio Laws, Part II, 3219, 3229–3239. In 1998, the General Assembly amended the JEDD statutes (effective March 22, 1999). Sub. H.B. No. 434. These changes do not affect our decision and opinion *sub judice.*

"But how are we to determine whether a given subject is of a general nature? One way is this: if the subject does or may exist in, and affect the people of, every county, in the state, it is of a general nature. On the contrary, if the subject cànnot exist in, or affect the people of every county, it is local or special. A subject matter of such general nature can be regulated and legislated upon by general laws having a uniform operation throughout the state, and a subject matter which cannot exist in, or affect the people of every county, can not be regulated by general laws having a uniform operation throughout the state, because a law can not operate where there can be no subject matter to be operated upon." (Emphasis *sic*.)

Thus, this first test applies to the statute's *subject matter*, not the geographical application. See *State ex rel. Wirsch v. Spellmire* (1902), 67 Ohio St. 77, 86, 65 N.E. 619, 622. The statutes provide for the creation of JEDDs, special economic districts which are formed by a contract between various governmental entities for the purposes of facilitating economic development, creating or preserving jobs and employment opportunities, and improving the economic welfare of the people in the state. These are necessarily subjects of a general nature. The needs the statute seeks to address exist throughout the state and by all the state's residents and, as we conclude below, a JEDD can be a possible solution throughout the state. See *State ex rel. Stanton v. Powell* (1924), 109 Ohio St. 383, 385, 142 N.E. 401. Moreover, in *Zupancic*, 58 Ohio St.3d at 138, 568 N.E.2d at 1213, we stated that "[h]istorically, tax statutes have been viewed by this court to be of a general nature," citing *Miller v. Korns* (1923), 107 Ohio St. 287, 301, 140 N.E. 773, 777; *State ex rel. Wilson v. Lewis* (1906), 74 Ohio St. 403, 415, 78 N.E. 523, 525.

Because we find R.C. 715.70 and 715.71 to be of a general nature, we must determine whether they operate uniformly throughout the state. In *Stanton*, this court articulated a test for the uniform operation of a statute:

"Section 26, Art. II of the Constitution, was not intended to render invalid every law which does not operate upon all persons, property or political subdivisions within the state. It is sufficient if a law operates upon every person included within its operative provisions, provided such operative provisions are not arbitrarily and unnecessarily restricted. And the law is equally valid if it contains provisions which permit it to operate upon every locality where certain specified conditions prevail. A law operates as an unreasonable classification where it seeks to create artificial distinctions where no real distinction exists." *Id.*, 109 Ohio St. at 385, 142 N.E. at 401.

The *Stanton* court considered the uniformity of operation of a statute that by its terms applied only to those counties with two or more common pleas judges where, at the time, the majority of the counties in Ohio had only one common pleas judge. The court held that even though the statute at issue in that case

could apply only to certain counties, nothing prevented application of the statute to a county that, *in the future,* adds a judge to its common pleas bench. *Id.* at 385, 142 N.E. at 401. Similarly, in *Zupancic,* this court considered a statute that classified taxing districts into those containing an electric company plant having production equipment with an initial cost exceeding $1 billion and those containing a plant having such property under that amount. At the time, only one $1 billion plant existed. The court held the statute to operate uniformly because nothing in the statute prevented its *prospective* application, however unlikely, to any taxing district in which a plant is built having production equipment with an initial cost exceeding $1 billion. The *Zupancic* court stated:

"[A] statute is deemed to be uniform despite applying to only one case so long as its terms are uniform and it may apply to cases similarly situated in the future. See *State, ex rel. Core, v. Green* (1953), 160 Ohio St. 175, 183, 51 O.O. 442, 445, 115 N.E.2d 157, 161–162; *Miller v. Korns, supra* [107 Ohio St.], at 295, 140 N.E. at 775." *Zupancic,* 58 Ohio St.3d at 138, 568 N.E.2d at 1213.

Appellants assert that because the legislation at issue in the case *sub judice* can apply only to municipalities and townships located in counties that have adopted a charter and because, at the time the legislation was approved, Summit County was the only county that had adopted a charter, the legislation could not operate uniformly throughout the state. However, pursuant to Sections 3 and 4, Article X, Ohio Constitution, a county may adopt a charter at any time and R.C. 715.70 and 715.71 do not prevent municipalities and townships that are located in a county that adopts a charter other than Summit County from creating a JEDD.[3] The JEDD legislation thus operates uniformly throughout the state.

Since R.C. 715.70 and 715.71 address a subject matter of a general nature and operate uniformly throughout the state, the legislation does not violate Section 26, Article II of the Ohio Constitution.

## IV

Appellants next challenge the JEDD statutes based upon the Equal Protection Clauses of the Ohio and the United States Constitutions. Initially, we note that

---

3. This court has invalidated legislation as violating the Uniformity Clause when the legislation does not allow for future application. See, *e.g., Put–In–Bay Island Taxing Dist. Auth.,* 65 Ohio St.3d 449, 605 N.E.2d 21, where the taxing district created by the legislation was limited to islands that are not connected to the mainland by a highway or a bridge. The court held this to violate the Uniformity Clause because it applied only to a limited geographical setting and "unlike the statute at issue in *Zupancic,* does not have the potential to apply throughout the state." *Id.* at 452–453, 605 N.E.2d at 23. See, also, *State ex rel. Dayton Fraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd.* (1986), 22 Ohio St.3d 1, 22 OBR 1, 488 N.E.2d 181, where this court held that the statute at issue violated the Uniformity Clause because it affected only those employees "who have *previously* been determined to be 'supervisors.'" (Emphasis added.) *Id.* at 5, 22 OBR at 5, 488 N.E.2d at 185.

the Equal Protection Clause of the United States Constitution, contained in the Fourteenth Amendment, and the Equal Protection Clause of the Ohio Constitution, contained in Section 2, Article I, are functionally equivalent. *Austintown Twp. Bd. of Trustees,* 76 Ohio St.3d at 359, 667 N.E.2d at 1179. That protection requires only that the classification rationally further a legitimate state interest unless the classification categorizes on the basis of an inherently suspect characteristic or jeopardizes the exercise of a fundamental right. *Valvoline Instant Oil Change, Inc. v. Tracy* (1997), 78 Ohio St.3d 53, 55, 676 N.E.2d 114, 115–116.

Appellants contend that the JEDD legislation denies them the fundamental right to vote and sets up a classification of (1) those who reside in the township and voted for the creation of the JEDD and the accompanying income tax, and (2) those who work or generate income in the JEDD and must pay the tax, but who had no opportunity to vote on the tax. The right to vote is a fundamental right. *Dunn v. Blumstein* (1972), 405 U.S. 330, 336, 92 S.Ct. 995, 999–1000, 31 L.Ed.2d 274, 280. However, as the court of appeals in the case *sub judice* stated, there is no denial of the actual right to vote:

"Appellants' right to vote is not affected, as they have no right to vote in the first place. Appellants are corporations located within the boundaries of the JEDDs at issue. Corporations cannot vote. Appellants' shareholders and employees do have the right to vote. However, a shareholder or employee generally votes where he resides, not where he works or where the business in which he has an ownership interest or at which he is employed is located. The JEDD legislation does not infringe upon the shareholders' or employees' fundamental right to vote."

The classification created by the legislation is not a suspect class, and as we held above, the legislation does not restrict the right to vote. Thus, the proper test under the Equal Protection Clause is whether the legislation rationally furthers a legitimate state interest. The legislative purpose of the JEDD statutes is to facilitate economic development to create or preserve jobs and employment opportunities, and to improve the economic welfare of the people in the state. R.C. 715.70(B)(1) and 715.71(B). This is a goal with which any governmental entity should be concerned and thus is legitimate.

Under the JEDD statutes, "two or more governmental units may negotiate a contract to share the fiscal benefits from the economic development of large tracts of land. The statutes encourage the participating governments to engage in joint planning and land use and building regulation." Meck & Pearlman, *supra,* at 649, Section 15.35. Thus, the statute provides for an efficient way for municipal services to be extended to the JEDD. The imposition of an income tax upon the businesses located in and the employees who work in the JEDD is a reasonable method of funding such services. Accordingly, the classification

created by the JEDD statutes is rationally related to a legitimate state interest and does not violate the Equal Protection Clauses of the Ohio and the United States Constitutions.

Finally, appellants assert that the JEDD statutes violate the Due Process Clauses of the Ohio and the United States Constitutions. In *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 354, 639 N.E.2d 31, 34, we set out the standards for substantive due process under each Constitution, when a fundamental right is not involved.

"Under the Ohio Constitution, an enactment comports with due process 'if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.' *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 110, 4 O.O.2d 113, 117, 146 N.E.2d 854, 860, citing *Piqua v. Zimmerlin* (1880), 35 Ohio St. 507, 511. Federal due process is satisfied if there is a rational relationship between a statute and its purpose. *Martinez v. California* (1980), 444 U.S. 277, 283, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488."

Appellants argue that the JEDD income tax effectively deprives them of property without allowing them the opportunity to vote on the tax. As we stated above, while there is a right to vote in general, there is no right to vote specifically for or against a tax. *State ex rel. v. Cincinnati* (1895), 52 Ohio St. 419, 456, 40 N.E. 508, 513 ("[T]he power of taxation does not rest upon the consent of the taxed, except as that consent is implied or shown in the enactment of laws by the representatives of the people, or is made requisite by legislation; and, therefore, taxes may be imposed, or authorized by the legislative body, within its discretion, for all public purposes, so long as the fundamental law is not violated.").

The legislative purpose of the JEDD statutes, to facilitate economic development to create or preserve jobs and employment opportunities, and to improve the economic welfare of the people in the state, is legitimate and the imposition of an income tax upon the businesses located in and the employees who work in the JEDD is a reasonable method of funding such services. Likewise, this legislative purpose bears a definite and substantial relationship to the general welfare of the state and because those paying the income tax benefit from the services provided, the tax imposed is not arbitrary or unreasonable. Accordingly, the tax does not violate the Due Process Clauses of the Ohio and the United States Constitutions.

## V

Because we hold that the statutes allowing for the creation of JEDDs do not improperly delegate the General Assembly's power to levy taxes and do not

violate the Uniformity Clause of the Ohio Constitution or deny equal protection and due process as guaranteed by the United States and the Ohio Constitutions, we find the statutes to be constitutional. We therefore affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.