BUCKLEY, APPELLANT, *v.* WILKINS, TAX COMMR., APPELLEE.

GIBBS ET AL., APPELLANTS, *v.* WILKINS, TAX COMMR., APPELLEE.

JEWETT, APPELLANT, *v.* WILKINS, TAX COMMR., APPELLEE.

[Cite as *Buckley v. Wilkins,* 105 Ohio St.3d 350, 2005-Ohio-2166.]

(Nos. 2003–1676, 2003–1713, and 2004–1614—Submitted
April 13, 2005—Decided May 18, 2005.)

**Per Curiam.**

{¶ 1} The appellants in these three consolidated cases have refused to pay Ohio income taxes for certain years. All of them allege that their wages and salaries are not "income" for tax purposes, and they contend that the state Tax Commissioner has no authority to collect taxes and penalties from them. For the reasons explained below, we reject those arguments and affirm the decisions of the Board of Tax Appeals in all three cases.

The Buckley Case

{¶ 2} Appellant Donna L. Buckley received two Form W–2 wage-and-tax statements from her employer for the year 2000 showing that she had received wages, tips, or other compensation totaling $78,413.39 that year. On her Form 1040 U.S. individual income tax return for the year 2000, however, Buckley indicated that she had received no wages, salaries, or tips. She likewise listed no income on her Form IT–1040 Ohio individual income tax return for the year 2000 and sought a refund of the taxes withheld.

{¶ 3} The Tax Commissioner sent a letter to Buckley in August 2001, explaining that she owed not only state income taxes for the year 2000 but also interest on the taxes not paid, a late-payment penalty under R.C. 5747.15(A)(2), and a $500 frivolous-filing penalty under R.C. 5747.15(A)(5). Buckley challenged that conclusion through an R.C. 5747.13(B) petition for reassessment. The Tax Commissioner then agreed to forgo the late-payment penalty, but he determined that Buckley still owed taxes, interest, and the $500 frivolous-filing penalty. Buckley appealed to the Board of Tax Appeals, which affirmed the Tax Commissioner's order. Buckley has now appealed as of right to this court.

## The Gibbs Case

{¶ 4} Appellant Rachel Gibbs likewise received a Form W–2 wage-and-tax statement from her employer for the year 1997, showing that she had received wages, tips, or other compensation totaling $33,094.85 that year. On her Form 1040 U.S. individual income tax return for the year 1997, however, Gibbs and her husband, Robert, indicated that they had received no wages, salaries, or tips. They also listed no income on their Form IT–1040 Ohio individual income tax return for the year 1997 and sought a refund of all Ohio taxes withheld. A refund check was issued to the Gibbses.

{¶ 5} The Tax Commissioner sent a letter to Robert and Rachel Gibbs in February 2000 explaining that they owed the refunded taxes and interest charges, and though the Gibbses challenged that finding, the Tax Commissioner adhered to his conclusion in a decision issued in January 2003. Robert and Rachel Gibbs appealed to the Board of Tax Appeals, which affirmed the Tax Commissioner's order. The Gibbses have now appealed as of right to this court.

## The Jewett Case

{¶ 6} Appellant Jerry A. Jewett, an Ohio attorney, did not file Ohio income tax returns for tax years 1991, 1992, 1993, and 1994. The Tax Commissioner obtained information from the United States Internal Revenue Service indicating that Jewett had earned taxable income during those years, and the Tax Commissioner sent a notice to Jewett in 2002 indicating that he owed Ohio income taxes for 1991 through 1994, as well as interest and penalties. Jewett filed a petition for reassessment with the Tax Commissioner, arguing that he owed no taxes, but the Tax Commissioner affirmed the initial assessment of taxes, interest, and penalties. Jewett appealed to the Board of Tax Appeals, which in turn affirmed the Tax Commissioner's order. Jewett has now appealed as of right to this court.

## The Appellants' Arguments

{¶ 7} The appellants' refusal to pay state income taxes is grounded in their view that wages are not "income" for tax purposes. We reject that view, as have many other courts. See, e.g., *Connor v. Commr. of Internal Revenue* (C.A.2, 1985), 770 F.2d 17, 20 ("Wages are income. * * * The argument that they are not has been rejected so frequently that the very raising of it justifies the imposition of sanctions"); *United States v. Connor* (C.A.3, 1990), 898 F.2d 942, 943 ("Every court which has ever considered the issue has unequivocally rejected the argument that wages are not income"); *Stubbs v. Commr. of Internal Revenue Serv.* (C.A.11, 1986), 797 F.2d 936, 938 (arguments suggesting that "wages are not taxable income * * * have been rejected by courts at all levels of the judiciary and are patently frivolous").

{¶ 8} To be sure, Ohio law does not expressly state that wages are income, but it has effectively done so, albeit in a roundabout—and perfectly valid—way. Ohio has imposed—in R.C. 5747.02(A)—a tax on the "adjusted gross income" of individuals and has defined "adjusted gross income" in R.C. 5747.01(A) as "federal adjusted gross income, as defined and used in the Internal Revenue Code, adjusted as provided in this section." In other words, the adjusted gross income of Ohio residents and those who earn or receive income in Ohio is taxed, and in calculating each taxpayer's "adjusted gross income," Ohio looks to the definition that Congress has given to that term in the Internal Revenue Code.

{¶ 9} Congress has defined "adjusted gross income" for individuals as "gross income minus * * * [various] deductions." Section 62(a), Title 26, U.S.Code. "Gross income" is in turn defined as "all income from whatever source derived, including (but not limited to) the following items:

{¶ 10} "(1) Compensation for services, including fees, commissions, fringe benefits, and similar items;

{¶ 11} "(2) Gross income derived from business." Section 61(a), Title 26, U.S.Code.

{¶ 12} In short, compensation paid to workers for their goods and services is income, and that income from wages and salaries is taxable by Ohio, just as it is by the federal government.

{¶ 13} The appellants argue that the Ohio Constitution does not allow the General Assembly to pass bills that refer to or incorporate language or definitions found in the Internal Revenue Code or elsewhere. They are wrong. See, e.g., *State v. Posey* (1988), 40 Ohio St.3d 420, 424, 534 N.E.2d 61 ("It is certainly within the province of the General Assembly to incorporate federal statutory provisions into state legislation"); *State v. Waller* (1944), 143 Ohio St. 409, 414, 28 O.O. 351, 55 N.E.2d 654, quoting *State ex rel. Fritz v. Gongwer* (1926), 114 Ohio St. 642, 649, 151 N.E. 752 (" 'The effectiveness of legislation by reference has been so generally recognized in Ohio that no very specific declaration appears in the reported cases' ").

{¶ 14} Section 15(A), Article II of the Ohio Constitution states, "The general assembly shall enact no law except by bill." Though the appellants suggest otherwise, nothing in that language bars the General Assembly from referring in bills to language or definitions found in other state or federal statutes. The provision simply requires that any proposed legislation originate in the form of a bill. It says not a word about the text of the bills themselves.

{¶ 15} The statutory provisions that the appellants question—R.C. 5747.01(A) and 5747.02(A)—have been duly enacted and amended various times over many years, most recently in 2003. See 2003 Am.Sub.H.B. No. 95. Previous versions

of the statutes were in effect when the appellants first challenged the state's power to collect an income tax from them, and those measures were likewise duly enacted as Section 15(A), Article II of the Constitution directs. We reject the appellants' claim that Ohio's statutory definition of "adjusted gross income" violates Section 15(A), Article II of the Ohio Constitution.

{¶ 16} The appellants next contend that the first paragraph of R.C. 5747.01— the statutory provision in which "adjusted gross income" and other terms used in Ohio's income tax statutes are defined—is so vague that the statute must be stricken under the void-for-vagueness doctrine. The language in question reads: "Except as otherwise expressly provided or clearly appearing from the context, any term used in this chapter has the same meaning as when used in a comparable context in the Internal Revenue Code, and all other statutes of the United States relating to federal income taxes." R.C. 5747.01.

{¶ 17} "The due process clause of the Constitution provides the foundation for the void for vagueness doctrine." *Columbia Natural Resources, Inc. v. Tatum* (C.A.6, 1995), 58 F.3d 1101, 1104. Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," and laws must also "provide explicit standards" for the police officers, judges, and jurors who enforce and apply them. *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222.

{¶ 18} In weighing the appellants' constitutional challenge to R.C. 5747.01, we must of course adhere to the oft-stated rule that a court's power to invalidate a statute "is a power to be exercised only with great caution and in the clearest of cases." *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16. Laws are entitled to a "strong presumption of constitutionality," and any party challenging the constitutionality of a law "bears the burden of proving that the law is unconstitutional beyond a reasonable doubt." Id.

{¶ 19} The void-for-vagueness doctrine "does not require statutes to be drafted with scientific precision." *Perez v. Cleveland* (1997), 78 Ohio St.3d 376, 378, 678 N.E.2d 537. Rather, "it permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional." Id., 78 Ohio St.3d at 378–379, 678 N.E.2d 537. The bar is not a high one, and a "civil statute that is not concerned with the First Amendment is only unconstitutionally vague if it is ' "so vague and indefinite as really to be no rule [or standard] at all" or if it is "substantially incomprehensible." ' " *Chavez v. Hous. Auth. of El Paso* (C.A.5, 1992), 973 F.2d 1245, 1249, quoting *United States v. Clinical Leasing Servs., Inc.* (C.A.5, 1991), 925 F.2d 120, 122, fn. 2, quoting *A.B. Small Co. v. Am. Sugar Refining Co.* (1925), 267 U.S. 233, 239, 45 S.Ct. 295,

69 L.Ed. 589, and *Exxon Corp. v. Busbee* (C.A.5, 1981), 644 F.2d 1030, 1033. The fact that "'the fertile "legal imagination can conjure up hypothetical cases in which the meaning"' of disputed terms could be questioned does not render the provision unconstitutionally vague." *Hutchins v. Dist. of Columbia* (C.A.D.C. 1999), 188 F.3d 531, 546, quoting *Terry v. Reno* (C.A.D.C.1996), 101 F.3d 1412, 1412, quoting *Grayned*, 408 U.S. at 110, 92 S.Ct. 2294, 33 L.Ed.2d 222, fn. 15, quoting *Am. Communications Assn. v. Douds* (1950), 339 U.S. 382, 412, 70 S.Ct. 674, 94 L.Ed. 925.

{¶ 20} The language that the appellants challenge is not unconstitutionally vague. It links the meaning of various terms in R.C. Chapter 5747—which addresses Ohio's income tax—to the definitions that Congress has given those same terms in Title 26, U.S.Code. That linkage actually works to eliminate confusion for taxpayers and tax collectors alike by providing both groups with uniform terms that apply to both state and federal tax laws. The Ohio statutory provision certainly is not "substantially incomprehensible," *Chavez*, 973 F.2d at 1249, and it does not "trap the innocent" or enable "arbitrary and discriminatory enforcement" of Ohio's income tax statutes. See *Grayned*, 408 U.S. at 108, 92 S.Ct. 2294, 33 L.Ed.2d 222. We reject the appellants' void-for-vagueness challenge to the first paragraph of R.C. 5747.01.

{¶ 21} We also find, notwithstanding the appellants' contrary arguments, that the Tax Commissioner has the statutory authority to question income tax returns on which taxpayers have listed no income. When a taxpayer "fails to file" an income tax return, "files an incorrect return, [or] fails to remit the full amount of the taxes due for the period covered by the return, * * * the tax commissioner may make an assessment against any person liable for any deficiency." R.C. 5747.13(A). In doing so, the Tax Commissioner may rely "upon any information in the commissioner's possession." Id. The commissioner so relied in each of these cases. He compared the Ohio tax returns filed by appellants Buckley and Gibbs with the information provided to his office by those appellants' employers and by the Internal Revenue Service, and he gathered information about appellant Jewett's income from the Internal Revenue Service. The commissioner then calculated the amount of income taxes owed by each of the appellants, together with relevant interest and penalty amounts. He certainly acted within his statutory powers when he did so.

{¶ 22} The appellants also question the authority of the employee in the Tax Commissioner's office who sent letters to the appellants advising them that they owed taxes, interest, and penalties. Here again, the Tax Commissioner acted properly, for R.C. 5747.18(C) empowers the commissioner to "[a]ppoint and employ such personnel as are necessary to carry out the duties imposed upon the commissioner by this chapter." The Revised Code does not compel the Tax

Commissioner to review and sign every official letter sent on his behalf by the employees in his office.

{¶ 23} And though the appellants argue that the Tax Commissioner improperly delegated the "investigation powers" that are mentioned in R.C. 5743.45 (which allows the Tax Commissioner to delegate those powers to employees of the Department of Taxation who have been certified by the Ohio Peace Officer Training Commission), we see no evidence to support that claim in the record. Indeed, as the Board of Tax Appeals said in the *Gibbs* appeal below, there is nothing in the record indicating that any investigation occurred at all involving these appellants. In any event, whether the Tax Commissioner or his employees did or did not conduct any such investigations, R.C. 5743.45 certainly empowered them to do so.

{¶ 24} Finally, appellant Buckley challenges the Tax Commissioner's discretionary decision to impose a $500 frivolous-filing penalty under R.C. 5747.15(A)(5). That provision indicates that "a penalty of up to five hundred dollars may be imposed" when a "taxpayer, qualifying entity, or employer" files a tax return that "does not contain information upon which the substantial correctness of the return may be judged or contains information that on its face indicates that the return is substantially incorrect" and when "the filing of the return in that manner is due to a position that is frivolous or a desire * * * to delay or impede" the proper collection of taxes.

{¶ 25} Buckley bears the burden of showing that the Tax Commissioner abused his discretion when he imposed the frivolous-filing fee. See *Southwestern Portland Cement Co. v. Limbach* (1991), 57 Ohio St.3d 22, 23, 565 N.E.2d 568 (explaining that the commissioner's action must have been "unreasonable, arbitrary and unconscionable" for an appellant to prevail on an abuse-of-discretion claim). Buckley contends that the wages she earned in the year 2000 were not income. That argument is frivolous, and the Tax Commissioner certainly did not abuse his discretion when he imposed the maximum frivolous-filing penalty under R.C. 5747.15(A)(5).

## Conclusion

{¶ 26} For the reasons explained above, the decisions of the Board of Tax Appeals in all three of these cases are affirmed.

Decisions affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

Jerry A. Jewett, for appellants.

Jim Petro, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.