DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal of the April 6, 2005 judgment of the Lucas County Court of Common Pleas which granted summary and declaratory judgment in favor of plaintiffs-appellees David Jankowski, Nancy Deeds and Robert Barnhart[1] and denied defendant-appellants Monclova-Maumee-Toledo Joint Economic Development Zone Board of Directors'[2] motion for summary judgment. Because we find that genuine issues of fact remain, we reverse the trial court's judgment.
 {¶ 2} The facts as stipulated by the parties are as follows. In August 2003, the governing bodies of Monclova, Maumee and Toledo, under the authority of R.C. 715.691, prepared a proposed contract for the creation of a joint economic development zone ("JEDZ Contract") between the Board of Trustees of Monclova Township, the city of Maumee, and the city of Toledo (referred to as "MMT"), with the objective of fostering regional development and job creation in an unincorporated area of Monclova Township. Pursuant to R.C. 715.691(D), notices were published and public hearings were conducted. At the November 4, 2003 general election, the voters of Monclova Township approved the JEDZ Contract.
 {¶ 3} On December 8, 2003, the MMT JEDZ Board held its organizational meeting. On February 19, 2004, the board unanimously passed an income tax resolution levying a 1.5 percent income tax on all business income and wages earned in the MMT JEDZ. The tax was to become effective April 1, 2004. The board members also agreed to contract with the city of Maumee to perform the tax collection services.
 {¶ 4} Thereafter, a letter was sent to all business owners within the MMT JEDZ informing them of the impending income tax. On March 10, 2004, appellees' counsel sent a letter to appellants' counsel informing them of their belief that the income tax was invalid because at least one elector lived in the MMT JEDZ and, pursuant to R.C. 715.691(H), an income tax may not be imposed without prior ratification, by vote or petition, by a majority of the electors residing within the zone. The letter also indicated the appellees' belief that other aspects of the JEDZ Contract were invalid.
 {¶ 5} At the March 18, 2004 board meeting, the board voted to indefinitely suspend implementation of the tax pending resolution of the legal issues raised by appellees. On March 24, 2004, appellees filed a complaint for declaratory judgment, requesting that the trial court declare that the JEDZ Contract was illegal and unenforceable, for the issuance of a preliminary and permanent injunction, and for illegal assessment of taxes in violation of R.C. Chapter 2723. On April 6, 2004, the Board amended the JEDZ Contract to exclude properties where potential electors resided. Thereafter, on May 27, 2004, an amended verified complaint was filed. The request for injunctive relief was ultimately withdrawn after the parties agreed that implementation of the income tax would be suspended pending a final determination of the action.
 {¶ 6} On July 30, 2004, appellants and appellees filed their respective motions for summary judgment as to all issues; oppositions to summary judgment and reply briefs were also filed. On April 6, 2005, the trial court granted appellees' motion for summary judgment and entered declaratory judgment in their favor. In its decision, the trial court determined that the JEDZ Contract had automatically terminated on March 3, 2004, and that the April 6, 2004 amendment was void. Based on its finding that the JEDZ Contract had terminated, the court found the remaining issues moot and they were not addressed. This appeal followed.
 {¶ 7} Appellants have set forth the following two assignments of error:
 {¶ 8} "First Assignment of Error
 {¶ 9} "The trial court erred in entering a declaratory judgment in favor of appellees, denying appellants' motion for summary judgment, and granting appellees' motion for summary judgment invalidating the JEDZ Contract on the basis that the 2003 JEDZ Contract had automatically terminated on March 3, 2004, due to a technical error in the adoption by the board of an income tax resolution.
 {¶ 10} "Second Assignment of Error
 {¶ 11} "The trial court erred in entering a declaratory judgment in favor of appellees, denying appellants' motion for summary judgment, and granting appellees' motion for summary judgment invalidating the JEDZ Contract on the basis that the amendment to the 2003 JEDZ Contract was invalid."
 {¶ 12} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment.Dresher v. Burt (1996), 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 13} In their first assignment of error, appellants contend that the trial court erred in finding that the JEDZ Contract automatically terminated because the board failed to adopt a valid income tax resolution by March 3, 2004, or 120 days after the effective date of the JEDZ Contract. Appellants assert that the board did, in fact, adopt a tax resolution within the time specified in the JEDZ Contract; however, due to unforeseen procedural errors it was not able to be implemented.
 {¶ 14} The relevant provisions of the JEDZ Contract provide:
 {¶ 15} "SECTION 6. INCOME TAX
 {¶ 16} "The Board is hereby authorized to adopt a resolution to levy an income tax within the JEDZ Territory at a rate not to exceed one and one-half percent (1.5 percent) and to adopt a set of regulations for the collection and enforcement of the tax. The income tax is subject to Chapter 718 of the Revised Code. In the event that a resolution imposing an income tax is adopted by the Board, the Board is further authorized to enter into a contract with one of the contracting municipal corporations to administer, collect, and enforce the income tax on behalf of the zone. The tax shall become effective no later than one hundred twenty (120) days after the effective date of this contract." * * *."[3]
 {¶ 17} "* * *.
 {¶ 18} "SECTION 11. TERM OF CONTRACT AND EFFECTIVE DATE
 {¶ 19} "This JEDZ Contract shall take effect immediately upon its approval by a majority of the voters within Monclova Township and shall be in force and effect through December 31st of the year which is thirty (30) years following the year in which the voters within Monclova Township approve this JEDZ Contract. * * *."
 {¶ 20} "SECTION 12. MODIFICATION, RENEWAL, AND TERMINATION OF JEDZ CONTRACT
 {¶ 21} "* * *. This JEDZ Contract shall be automatically terminated 120 days after the effective date set forth in Section 11 above if the Board has not, prior to the expiration of the 120 day period, adopted a resolution to levy an income tax within the JEDZ Territory at a rate of one and one-half percent (1.5 percent).
 {¶ 22} "This JEDZ contract shall be automatically terminated if, as a result of any litigation brought by any person whatsoever, a court should invalidate (1) the contract or payments for services to Monclova contained in Section 5 above, or (2) the provision for the imposition within the JEDZ of an income tax of 1 1/2 % contained in Section 6 above. The date of the termination shall be the end of the day upon which the time for appeal of a final order invalidating such contract provision expires, provided no appeal has been filed during such time to a higher court. * * *."
 {¶ 23} Again, appellants dispute the trial court's conclusion that because procedural defects were later discovered which hindered the implementation of the income tax, the tax resolution was void at its inception. Appellees contend that the JEDZ Contract, as a contract involving the expenditure of public monies, should be strictly construed. We agree with appellees' assertion; however, our analysis is also controlled by the most basic rules of contract interpretation. We must examine the JEDZ Contract with the purpose of ascertaining the intent of the parties. See Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities Auth. (1997), 78 Ohio St.3d 353,1997-Ohio-202. "`The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Id. at 361, quoting Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130, paragraph one of the syllabus. It is a tenet of contract interpretation that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the fact or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 24} In its April 6, 2005 decision, the trial court stated that the tax resolution "must be one which has the possibility of actually levying a tax." And that "[a] resolution that attempts to levy a tax which could never occur does not effectively levy such tax." The court's findings were based on the fact that passage of the income tax resolution was contingent on the approval of the two electors later discovered to reside within the MMT JEDZ. According to R.C. 715.691(H)(1), the proposed income tax must first be:
 {¶ 25} "submitted to and approved by the electors of the zone at the succeeding regular or primary election, or a special election called by the board, occurring subsequent to seventy-five days after a certified copy of the resolution levying the income tax and calling for the election is filed with the board of elections. * * *. No election shall be held under this section if a majority of the electors residing within the zone, determined as specified in division (H) of this section, submit a petition to that effect to the board of directors. * * *."
 {¶ 26} Appellants maintain that the Board adopted the February 19, 2004 income tax resolution in accordance with R.C. 714.691(H)(3), which does not require an election where no electors reside within the zone. The fact that two electors did, in fact, reside within the zone was not discovered until March 10, 2004. Appellants state that upon notification that electors may have resided in the MMT JEDZ, the Board immediately suspended implementation of the tax pending resolution of the legal issues.
 {¶ 27} Narrowly written, the issues before us include: (1) whether the February 19, 2004 income tax resolution was required to be valid or capable of levying income tax as stated by the trial court; (2) if so, was the resolution valid; and (3) if the resolution was invalid does that require automatic termination of the JEDZ Contract.
 {¶ 28} First, a plain reading of the JEDZ Contract provides that the contract would automatically terminate if the Board failed to adopt a resolution to levy an income tax within 120 days after November 4, 2004. The parties do not dispute that a tax resolution was adopted on February 19, 2004, which is prior to the March 3, 2004 deadline. At the time it was passed, appellants had no reason to believe that any electors resided within the MMT JEDZ or that the tax resolution was invalid. The trial court found that the income tax resolution was incapable of ever levying an income tax because its effective date was April 1, 2004, less than the 75 days required between certification to the board of elections and the date of the general or special election. R.C. 715.691(H)(1). Additionally, under R.C.715.691(H)(1) an election is not required where the majority of the electors living within a zone submit a petition to that effect.
 {¶ 29} Next, conceivably, the two electors living within the MMT JEDZ could have, by petition, agreed to the income tax thereby eradicating the need for a vote on the issue and allowing the tax to become effective on April 1, 2004. Thus, by its own terms, the tax resolution was not incapable of ever levying a tax. Finally, even assuming that the tax resolution was later determined to be invalid, issues remain regarding the board's ability to amend the JEDZ Contract.
 {¶ 30} In response to appellants' assignment of error, appellees also contend that the JEDZ Contract was illegal and unenforceable because there is no consideration for the provision providing payments to Monclova Township for services it already provides. Because we have determined that the court erroneously determined that the JEDZ Contract automatically terminated, and because the trial court did not address this issue, we find that it is not properly before us at this time. See Am. MotoristsIns. Co. v. Intihar, 8th Dist. No. 82335, 2003-Ohio-5075, ¶ 15;Murray v. Grange Mut. Cas. Co., 5th Dist. No. 2003CA00047, 2003-Ohio-3365, ¶ 9.
 {¶ 31} Based on the foregoing, we find that factual issues remain regarding the enforceability of the JEDZ Contract and, particularly, the resolution to levy an income tax adopted in furtherance thereof. Appellants' first assignment of error is well-taken.
 {¶ 32} In appellants' second assignment of error, they argue that the trial court, in addition to erroneously finding that the JEDZ Contract automatically terminated pursuant to Section 12 of the contract, erroneously failed to rule on whether the board could amend the JEDZ Contract without voter approval. At the November 16, 2005 oral argument held on this matter, appellants agreed to withdraw this assignment of error because the trial court had not ruled on the issue. Accordingly, we find that appellants' second assignment of error is moot.
 {¶ 33} On consideration whereof, we find that substantial justice has not been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is reversed and the case is remanded for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Skow J, Parish, J., concur.
[1] On the date of the May 27, 2004 amended verified complaint, Jankowski averred that he was a resident of Monclova Township, Deeds averred that she was a resident of Maumee, and Barnhart averred that he was a resident of Toledo. Plaintiffs further alleged that they were either business owners or employed within the Monclova-Maumee-Toledo Joint Economic Development Zone.
[2] The city of Toledo, city of Maumee and the Board of Trustees of Monclova Township, individually, were also named as defendants.
[3] We agree with appellants that the 120 days referenced in this section provides that the income tax must be in effect within 120 days from the date of the contract with the city of Maumee, not 120 days after the effective date of the JEDZ Contract.