JANKOWSKI et al., Appellants,

v.

MONCLOVA–MAUMEE–TOLEDO JOINT ECONOMIC DEVELOPMENT
ZONE BOARD OF DIRECTORS et al., Appellees.

[Cite as *Jankowski v. Monclova–Maumee–Toledo Joint Economic
Dev. Zone Bd. of Dirs.*, 185 Ohio App.3d 568, 2010-Ohio-181.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–09–1130.

Decided Jan. 22, 2010.

Albin Bauer II and Daniel W. Everson, for appellants David D. Jankowski and Robert Barnhart.

Sheilah H. McAdams, Law Director, for appellants city of Maumee and Monclova–Maumee–Toledo Joint Economic Development Zone Board of Directors.

Adam W. Loukx, Acting Law Director, and Paul F. Syring, Senior Attorney, for appellees city of Toledo and Monclova–Maumee–Toledo Joint Economic Development Zone Board of Directors.

Walter J. Celley, Solicitor, for appellees Board of Trustees of Monclova Township and Monclova–Maumee–Toledo Joint Economic Development Zone Board of Directors.

SINGER, Judge.

{¶ 1} Appellants appeal a summary judgment entered in the Lucas County Court of Common Pleas against them and in favor of a Joint Economic Development Zone in a suit challenging the legality of an income tax imposed upon

employees and businesses within the zone. For the reasons that follow, we affirm in part and reverse in part.

{¶ 2} In 2003, the governing bodies of appellees, Monclova Township, the city of Maumee, and the city of Toledo, produced a proposed contract for the creation of a Joint Economic Development Zone ("JEDZ") for a commercial area lying generally west of Interstate 475 and south of Salisbury Road in Monclova Township in Lucas County. After Maumee and Toledo adopted the contract, the citizens of Monclova Township approved it at the 2003 general election.

{¶ 3} In 2004, the JEDZ board of trustees enacted a one and one-half percent income tax on all businesses and individuals in the zone, effective in April 2004. In March 2004, appellants, David Jankowski and Robert Barnhart, instituted a declaratory judgment action to invalidate the tax and enjoin its collection.

{¶ 4} Appellants asserted that (1) because electors live in the JEDZ, an income tax could not statutorily be imposed without their approval by vote or petition, (2) the JEDZ contract terminated automatically when the JEDZ board failed to institute an income tax within 120 days of the contract's effective date, (3) the contract's prohibition of annexation was unlawful, (4) a provision requiring the JEDZ to contract with the township for governmental services was unlawful, and (5) a contract for services with the township for services that the township is already legally obligated to provide is nothing more than an attempt to share income tax revenues with the township, an arrangement that is not permitted in law.

{¶ 5} The JEDZ board suspended the tax pending resolution of the legal issues. In April 2004, the JEDZ board amended the JEDZ contract to exclude from the zone the two properties in the zone upon which there were residents. In May 2004, appellants amended their complaint to allege that the JEDZ board's amendment excluding inhabited residences from the zone was illegal.

{¶ 6} The trial court would eventually rule that the contract terminated by its own terms when the JEDZ board failed to effect an income tax in the district within 120 days. Appellees appealed this judgment and won reversal. *Jankowski v. Monclova–Maumee–Toledo JEDZ*, 6th Dist. No. L–05–1156, 2005-Ohio-6652, 2005 WL 3440781, ¶ 28. We remanded the case to the trial court for consideration of other issues found moot as the result of the initial judgment. Id. at ¶ 33.

{¶ 7} On remand, the matter was submitted to the court on cross-motions for summary judgment with stipulated facts and exhibits. On consideration, the trial court granted appellees' motion for summary judgment on all issues and denied appellants'.

{¶ 8} In a comprehensive judgment, the court concluded that appellees' 2003 JEDZ agreement did not contravene the intent and purposes of R.C. 715.691, nothing in R.C. 715.691 requires that income tax revenues be used exclusively in the JEDZ, the JEDZ board's contract with Monclova Township to provide governmental services in the zone was lawful, and the subsequent amendment of the 2003 JEDZ agreement was proper.

{¶ 9} From this judgment, appellants now bring this appeal. Appellants set forth the following three assignments of error:

{¶ 10} "First Assignment of Error:

{¶ 11} "The trial court erred in holding that a JEDZ income tax levied pursuant to R.C. 715.691(H) may be distributed to one or more contracting municipalities for expenditure of municipal purposes having no relationship or benefit to the JEDZ.

{¶ 12} "Second Assignment of Error:

{¶ 13} "The trial court erred in sustaining the validity of the contract between the JEDZ and Monclova Township required by paragraph 5 of the JEDZ contract.

{¶ 14} "Third Assignment of Error:

{¶ 15} "The trial court erred in declaring the JEDZ contract valid because the essential provisions of the 2003 JEDZ contract violate the express terms and purpose of R.C. 715.691."

{¶ 16} Appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when the following are demonstrated:

{¶ 17} "(1) [T]hat there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 67, 8 O.O.3d 73, 375 N.E.2d 46. Civ.R. 56(C).

{¶ 18} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere

allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 463 N.E.2d 1246. A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186; *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 19} R.C. 715.691 provides an alternative structure for the creation of a Joint Economic Development Zone when one of the parties to the JEDZ contract does not levy a municipal income tax. The statute provides:

{¶ 20} "(B) * * * Two or more municipal corporations or one or more townships and one or more municipal corporations may enter into a contract whereby they agree to share in the costs of improvements for an area or areas located in one or more of the contracting parties that they designate as a joint economic development zone for the purpose of facilitating new or expanded growth for commercial or economic development in the state. The contract and zone shall meet the requirements of divisions (B) to (J) of this section.

{¶ 21} "(C) The contract shall set forth each contracting party's contribution to the joint economic development zone. The contributions may be in any form that the contracting parties agree to, and may include, but are not limited to, the provision of services, money, or equipment. The contract may be amended, renewed, or terminated with the consent of the contracting parties. * * *

{¶ 22} "(D) Before the legislative authority of any of the contracting parties enacts an ordinance or resolution approving a contract to designate a joint economic development zone, the legislative authority of each of the contracting parties shall hold a public hearing concerning the contract and zone. * * *

{¶ 23} "(E) After the public hearings required under division (D) of this section have been held, each contracting party may enact an ordinance or resolution approving the contract to designate a joint economic development zone. * * * If any of the contracting parties is a township * * * the township or townships shall submit the resolution to the electors.

{¶ 24} "(F) * * *

{¶ 25} "If a majority of the electors of each contracting party voting on the issue vote for the ordinance or resolution and contract, the ordinance or resolution shall become effective immediately and the contract shall go into effect immediately or in accordance with its terms.

{¶ 26} "(G)(1) A board of directors shall govern each joint economic development zone * * *.

{¶ 27} "(3) The board is a public body for the purposes of [R.C. 121.22]. [R.C. Chapter 2744] applies to the board and the zone.

{¶ 28} "(H) The contract may grant to the board of directors appointed under division (G) of this section the power to adopt a resolution to levy an income tax within the zone. *The income tax shall be used for the purposes of the zone and for the purposes of the contracting municipal corporations pursuant to the contract.* The income tax may be levied in the zone based on income earned by persons working within the zone and on the net profits of businesses located in the zone. The income tax is subject to [R.C. Chapter 718], except that a vote shall be required by the electors residing in the zone to approve the rate of income tax unless a majority of the electors residing within the zone * * * submit a petition to the board requesting that the election * * * not be held. If no electors reside within the zone, then division (H)(3) of this section applies. The rate of the income tax shall be no higher than the highest rate being levied by a municipal corporation that is a party to the contract.

{¶ 29} "(1) The board of directors may levy an income tax at a rate that is not higher than the highest rate being levied by a municipal corporation that is a party to the contract, provided that the rate of the income tax is first submitted to and approved by the electors of the zone * * *. If the voters approve the levy of the income tax, the income tax shall be in force for the full period of the contract establishing the zone. No election shall be held under this section if a majority of the electors residing within the zone, determined as specified in division (H) of this section, submit a petition to that effect to the board of directors. * * *

{¶ 30} "(3) If no electors reside in the zone, no election for the approval or rejection of an income tax shall be held under this section * * *. * * *

{¶ 31} "(4) The board of directors of a zone levying an income tax shall enter into an agreement with one of the municipal corporations that is a party to the contract to administer, collect, and enforce the income tax on behalf of the zone." (Emphasis added.)

## I.  Tax Distribution

{¶ 32} The JEDZ contract provides that the board enter into a contract with Monclova Township to furnish within the zone all "usual and customary governmental services." In compensation, the township is to be paid one-third of the net proceeds of the income tax. The remainder of the net proceeds is to be equally divided between Maumee and Toledo. The parties have stipulated that once the JEDZ began to collect income taxes, the net proceeds were distributed with one-third of the net going to the general funds of Maumee, Toledo, and Monclova Township.

{¶ 33} In their first assignment of error, appellants contend that R.C. 715.691(H) permits the use of tax revenues from the JEDZ only for the benefit of the JEDZ. By depositing JEDZ tax receipts into the cities' general funds, appellants insist, these funds may be used for purposes unrelated to the JEDZ.

{¶ 34} Appellees disagree, finding nothing in the language of the statute that mandates that income tax revenues collected in the JEDZ be spent in or for the JEDZ. Indeed, appellees maintain, such a tortured interpretation would render superfluous the portion of R.C. 715.691(H) that provides, "The income tax shall be used * * * for the purposes of the contracting municipal corporations pursuant to the contract."

{¶ 35} Taxing statutes require strict construction. Any doubt must be resolved in favor of the citizen or property upon whom the tax burden is to be imposed. *Davis v. Willoughby* (1962), 173 Ohio St. 338, 19 O.O.2d 270, 182 N.E.2d 552, paragraph one of the syllabus. Nevertheless, a cardinal rule of statutory construction directs that we look first to the language of the statute to determine legislative intent. Where the language of the statute is plain and unambiguous, any interpretive effort is at an end, and the statute must be applied as written. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 304 N.E.2d 378. In reading the statute, we are directed to presume that the entire statute is intended to be effective and that each part has some import. R.C. 1.47(B), *Ford Motor Co. v. Ohio Bur. of Emp. Servs.* (1991), 59 Ohio St.3d 188, 190, 571 N.E.2d 727.

{¶ 36} Appellants insist that R.C. 715.691(H) must be read in concert with R.C. 715.691(B) and (C). These sections, according to appellants, establish that the purpose of the legislation is to facilitate new or expanded commercial and economic development and define the contribution of each JEDZ partner to the zone. Consequently, use of funds from the JEDZ should be restricted to the JEDZ.

{¶ 37} We find nothing in R.C. 715.691(B) or (C) that reflects a legislative intent to restrict the use of the proceeds of a JEDZ income tax to improvements within the zone. In our view, the only portion of R.C. 715.691 going to the use of the funds obtained from such a tax is contained in section (H): "The income tax shall be used for the purposes of the zone and for the purposes of the contracting municipal corporations pursuant to the contract."

{¶ 38} Had this phrase concluded with the directive to use the tax receipts for purposes of the zone, then appellants' construction of the statute would undoubtedly be valid. Had the legislature intended to limit the use of the tax proceeds to the zone, it could have stopped with that directive. With the second clause of that sentence, however, it is clear that the legislature intended a greater breadth

in the permissible use of these funds. Revenues may be used for the purposes of the zone, the purposes of the contracting municipalities (as circumscribed by the terms of the JEDZ contract), or both. As a matter of law, nothing in R.C. 715.691 prohibits the distribution of funds in the manner to which appellants object. Accordingly, appellants' first assignment of error is not well taken.[1]

## II.  Governmental Services Contract

{¶ 39} In their second assignment of error, appellants complain that the JEDZ contract with Monclova Township to provide governmental services within the JEDZ should not be sustained because it is without consideration. According to appellants, the township already has a legal duty to provide such services by virtue of the JEDZ's being within the township. Moreover, the township already levies property taxes on the property within the JEDZ for purposes of providing such services. Absent some greater contribution from the township, appellants contend, the payment authorized by the JEDZ contract is nothing more than a thinly disguised unlawful distribution of income tax revenues to the township.

{¶ 40} The trial court rejected this argument, concluding that (1) R.C. 715.691(C) authorizes the contracting parties to a JEDZ agreement to provide services to the zone and does not preclude a township from receiving payment for those services, (2) a JEDZ board is a "body corporate" and responsible for governmental activities within the zone, (3) R.C. 9.60(B) and (C) authorize governmental entities to contract for fire protection and emergency medical services, (4) R.C. 715.691(H) authorizes a JEDZ board to levy an income tax within the zone and use its receipts for the purposes of the zone, (5) such a tax is constitutional, (6) absent a contract, the township would have no right or duty to provide services within the zone, and (7) payment for the provision of usual and customary services is not a distribution of income taxes to the township, but a payment "for the purposes of the zone."

{¶ 41} The parties stipulate that well before the creation of the JEDZ, Monclova Township had in place property tax levies for purposes of township road maintenance, fire services, and emergency medical services. It is also stipulated that the township provides the same zoning services, fire protection and prevention services, emergency medical services, and road-maintenance services within the JEDZ, as it does for the remainder of the township outside the zone.

---

1. In each of their assignments of error, appellants include an implied challenge to the constitutionality of R.C. 715.619. As appellees point out, appellants' amended complaint did not seek such a declaration, nor did appellants comply with R.C. 2721.12(A). Moreover, a companion statute has been found constitutional. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 706 N.E.2d 323.

{¶ 42} The "governmental services" contract between the JEDZ and the township provides that the township "shall furnish or cause to be furnished to the properties included in the JEDZ territory, all usual and customary governmental services furnished by Monclova to other comparable properties in Monclova, including: fire protection, medical rescue, and road maintenance services." In return,. Monclova Township is to receive one-third of the net tax revenues from the zone.

{¶ 43} The boundaries of a township are, for the most part, within the purview of the county commissioners of the county in which the township is located. See R.C. 503.02 to 503.15. Even if a municipality is organized within the boundaries of a township, the territory within the city limits remains part of the township, absent the exercise of a statutory method to adjust the township boundaries. *State ex rel. Halsey v. Ward* (1867), 17 Ohio St. 543, paragraph one of the syllabus; *Hudson Twp. Bd. of Trustees v. Lambrix* (1978), 60 Ohio App.2d 295, 297, 14 O.O.3d 260, 396 N.E.2d 1056. An automatic absorption of township territory into a municipality would require either express or implied statutory authority, which is not found. *State ex rel. Halsey* at 546. Logically, the rule for municipalities should apply to special districts or zones.

{¶ 44} The parties have not directed our attention to, nor has our independent study revealed, any statutory authority directing the automatic absorption of township territory into a JEDZ on creation of the JEDZ. Absent such authority, we must conclude that the territory encompassed in the Monclova–Maumee–Toledo JEDZ remains a part of Monclova Township. Therefore, the occupiers of property within the zone are entitled to the same governmental services provided elsewhere in Monclova Township. Moreover, the Monclova Township Trustees have the same duty to provide usual and customary governmental services in the JEDZ as they do elsewhere in the township.

{¶ 45} As a result, the trustees of Monclova Township have a pre-existing legal duty to perform governmental services within the JEDZ, which are the same services that they have contracted to provide to the JEDZ in return for compensation. "Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration * * *." Restatement of the Law 2d, Contracts (1979) 179, Section 73. See also id. at 179–180, comments *a* and *b*. Consideration is an essential element of any contract, id. at 51, Section 17; *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16, without which there is no contract. 3 Lord, Williston on Contracts (4th Ed.2008) 176, Section 7:11.

{¶ 46} As a matter of law, Monclova Township has a duty to provide usual and customary governmental services in the JEDZ. Because the contract between the township and the JEDZ is premised on the consideration of the township

performing services that it is already legally obligated to provide, the contract fails for want of consideration. Accordingly, to the extent that appellants complained that the trial court erred in declaring the contract valid, their second assignment of error is well taken. It is not well taken in any other respect.

{¶ 47} It is important to note that this does not invalidate the JEDZ income tax, nor does it imply that the contract was part of a scheme to improperly direct income tax revenue to the township. Neither does it foreclose compensation to the township for services above and beyond the ordinary that have been or will be provided to the JEDZ.

## III. 2003 JEDZ Contract

{¶ 48} In their remaining assignment of error, appellants maintain that the trial court's declaration of the validity of the 2003 JEDZ contract was erroneous because the contract violated the terms and purposes of R.C. 715.691. Appellants point to section (B), noting that the language of that section grants authority to make a contract "to share the costs of improvements" within the zone and mandates that "[t]he contract and zone *shall* meet the requirements of divisions (B) to (J) of this section." (Emphasis appellants'.) Appellants suggest that these provisions are the essence of the statute.

{¶ 49} Having defined what they believe to be the essence of the statute, appellants compare the terms included in the 2003 JEDZ contract and find them wanting. Appellants insist that sections 3 and 9 of the JEDZ contract expressly disclaim any specific obligation to make any specific improvements or provide any specific services or benefits for the zone. Appellants point to a paragraph in section 3, which states:

{¶ 50} "Nothing contained herein shall be construed as obligating any party to provide any particular service, level of service, or financial commitment to the JEDZ Territory, and such matters shall be left to the further agreement of the parties."

{¶ 51} A paragraph in section 9 provides:

{¶ 52} "Nothing herein shall be construed as imposing upon any party an obligation to undertake and pay for improvements other than as the parties may subsequently agree from time to time."

{¶ 53} At best, appellants insist, these provisions constitute an agreement to make a future unspecified, undefined agreement that falls short of the enforceable commitment to make specific improvements contemplated by R.C. 715.691.

{¶ 54} Appellees respond that while the 2003 JEDZ contract does not require specific improvements or services, it certainly contemplates the parties providing benefits and improvements in the zone. Incorporated into the agreement is an

Economic Development Plan for the JEDZ. This plan, read in conjunction with the contract agreement that the parties pay for and share the cost as may be mutually agreed, satisfies the statutory requirements, appellees insist.

{¶ 55} Moreover, appellees maintain, since the inception of the agreement, the parties have expended, or committed to expend, substantial sums for the benefit of the zone. Monclova Township has hired an economic-development coordinator whose duties include facilitating economic development in the zone. Toledo shared in the cost and contributed right-of-way and utility easements for a major connector road within the zone. Maumee has contributed substantial sums for an interstate interchange that will enhance access to the zone. These substantive acts, appellees assert, debunk any inference that the agreement memorialized in the 2003 JEDZ contract was illusory.

{¶ 56} As the trial court noted, the preamble to the 2003 JEDZ contract sets forth the intention of the signatories to promote "cooperative regional development and job creation * * * and [the] desire to facilitate new and expanded growth for commercial and industrial development in the State." In furtherance of these goals, the parties, through the contract, "set forth their mutual agreements with respect to the JEDZ Territory, the sharing of costs of improvements in the JEDZ Territory [and] their respective contributions to the ZEDZ Territory."

{¶ 57} Section 3 of the 2003 JEDZ contract incorporates by reference the economic development plan for the territory. The plan defines "[t]he amount and nature of the contribution of each contracting party to the development and operation of the JEDZ." The economic-development plan details specific improvement projects in the JEDZ, including the installation of streets and utility services on land owned by the city of Toledo, storm drainage on Jerome Road, the installation of traffic lights, and a new interchange at Salisbury Road and I–475. The plan enumerates a list of specific improvements with the estimated completion date of each. The plan also calls for the JEDZ Board to "promote, advertise, and publicize" the zone.

{¶ 58} All these projects clearly fall within the intent to promote commerce articulated in R.C. 715.691. Moreover, because the completion dates of the proposed improvements extend to a horizon as late as 2018, the parties' desire to defer the specific financial arrangements is within the contemplation of the statute. Accordingly, the terms of the 2003 JEDZ contract are consistent with the terms of its enabling legislation. Appellants' final assignment of error is not well taken.

{¶ 59} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to said court for further consideration, consistent with this decision. It is ordered

that the parties share equally the court costs of this appeal, pursuant to App.R. 24.

Judgment affirmed in part
and reversed in part.

HANDWORK and PIETRYKOWSKI, JJ., concur.